CHARLES M. CARPENTER, APPELLANT; v. OVERLAND TIRE COMPANY, RESPONDENT.

Argued May 20, 1925—Decided October 19, 1925.

1. Loyalty by a sales agent to the interests of his principal in the subject-matter of the agency is an essential requisite to the agent's right to recover his commission from the principal; and where he has been a party to the sacrifice of such interests without the principal's knowledge, he has forfeited his right to such commission.

2. An admitted general authority in the president of a corporation to offer for sale and to contract to sell a particular parcel of the corporation's real estate, cannot, without express authority so to do from the board of directors, be construed to embrace authority to waive a forfeiture (because of acts of disloyalty) of a sales agent's commission, where before such alleged waiver a sale of the property in question had been actually closed by such president on behalf of the corporation through other agents, whereby the latter had earned and the corporation had become

liable to pay to them the commission on the sale. The termination of a general authority by the accomplishment of its object terminates also the incidental authority to do those acts necessary or desirable in order to bring about such accomplishment.

3. In the absence of an exclusive agency, it is the agent who, in good faith and without fraud on his part, procures and "delivers" (*i. e.*, actually closes the sale to) the purchaser, that is entitled to the commission; and the principal, also acting in good faith and without fraud, is only liable for the payment of the commission to that agent. Citing *Vreeland* v. *Vetterlein*, 33 *N. J. L.* 247.

4. In the absence of a contract granting the agent an exclusive agency, where a prospective purchaser, who has been procured and introduced to the owner-principal by the agent, secretly procures a third party to negotiate through other brokers.(with whom the property had also been listed for sale by the owner) with such owner, and such owner, believing and relying upon representations of such other brokers and such third party that the latter is purchasing in his own behalf, enters into a contract of sale with such other party for a lower price, and on less advantageous terms than he would have accepted from the original prospective purchaser—*Held*, that the agent could not recover against the owner a commission upon the sale to such other party, although it subsequently developed that the latter was, in fact, acting in behalf of the prospective purchaser originally procured by the agent. Citing *Resky* v. *Meyer*, 98 *N. J. L.* 168.

On appeal from the Supreme Court.

For the appellant, *Frank Benjamin.*

For the respondent, *W. Howard Demarest.*

The opinion of the court was delivered by

WHITE, J.   The plaintiff, Carpenter, who was not a real estate agent, and who was in the employ of the General Electric Company, was approached by the president (Olwell) of the defendant company, which owned a factory, that it desired to sell, and was told by Olwell that if he would bring about a sale of it to the General Electric Company the defendant would pay him a commission of $5,000 for so doing. Carpenter immediately entered into negotiations with Mr. Evans, the proper officer of the General Electric Company, to bring about such a sale, acquainting Mr. Evans with the fact

that should it go through he, Carpenter, was to receive a commission from the defendant company. Evans became interested and examined the property. He thereupon told Carpenter to "keep his hands off" the sale, as the General Electric Company was going to buy the property on the outside through its Mr. Whiteside, the latter negotiating through other brokers (with whom the property had been listed for sale by the defendant), and pretending to purchase in his own behalf or in behalf of some other concern not connected with the General Electric. Plaintiff was thus placed in the embarrassing position of having to decide whether to obey the instructions of his regular employer, the General Electric Company, thereby forfeiting his right to commission on the sale from his principal, the defendant company, or of holding fast to his prospective commission by being loyal to his principal and, in so doing, declining to carry out the instructions of his regular employer, possibly thereby jeopardizing his regular employment. When this suit was first tried the plaintiff testified that he obeyed the instructions of his employer, and did, in fact, "keep his hands off;" but at the second trial, after a rule to show cause had been made absolute by the Supreme Court, he testified that he attempted surreptitiously to disobey his employer's orders by trying to call up Olwell, the defendant's president, over the telephone to acquaint him with what the General Electric Company intended to do, but that he failed to get in communication with him. As a matter of fact, within twelve hours after plaintiff's conversation with Evans, Olwell, the president of the defendant company, met the plaintiff (they lived in the same boarding house and were close friends) and told him that the defendant company had sold the property to a man named Whiteside through outside brokers, whereupon the plaintiff told Olwell that Whiteside was in reality the General Electric Company. Olwell was surprised and naturally somewhat indignant at learning this fact, and, at plaintiff's request, a day or so afterwards signed a paper, which was dated back to the time of their first interview, putting in writing an agreement for the defendant company to pay plaintiff the $5,000 commission in case of a sale through him to the Gen-

eral Electric "people," Olwell's comment being that the word "people" would include Whiteside, who was an officer of one of the subsidiaries of the General Electric Company. There was some controversy as to just what was the purpose of this paper, Olwell testifying that it was only given to assist Carpenter to get a share of the commission of the outside brokers, and that he expressly stipulated that his company was not to be required to pay two commissions, and that if he got "in a jam" Carpenter was to return the paper to him. Carpenter, on the other hand, insists that the paper was intended to be real, and was for the purpose of putting in legal form, namely, in writing, the oral contract as originally made.

Upon the first trial the Supreme Court set aside the verdict upon a rule to show cause on the ground that the evidence was uncontradicted that Carpenter had failed in his loyalty to his principal by complying with the order of his regular employer to "keep his hands off" the sale, and that, therefore, he could not recover. Upon the second trial, and the verdict again coming before the Supreme Court on a rule to show cause, it was again set aside on the same ground, the court taking the view that plaintiff's testimony on that trial that he had ineffectually attempted to acquaint Olwell with the proposed scheme to purchase in the name of a third party did not alter the legal result because the attempt to counteract or destroy the effect of his disloyalty was unsuccessful. The third trial which also came up to the Supreme Court on rule to show cause, developed substantially the same evidence as the second trial, and upon the verdict again being set aside there was a stipulation on the fourth trial whereby the evidence of the third trial was read from the record, and the learned trial judge, in accordance with the view of the Supreme Court as expressed in the *per curiam* on the third rule to show cause, directed a verdict in favor of the defendant from a judgment upon which this appeal has been taken.

As was said by the Supreme Court in the *per curiam* on the second rule to show cause: "One essential requisite of an agent in the law is loyalty to his principal, and it is, of course, fundamental that an agent cannot recover from the principal in a case where he has been a party to the sacrifice

of that principal's interests without the latter's knowledge and by fraud or intentional concealment." 2 *C. J.* 694, 712; 9 *Id.* 536; *Rogers* v. *Genung*, 76 *N. J. Eq.* 306; *Sternberger* v. *Young*, 73 *Id.* 586.

We incline to the view that the Supreme Court properly held that the evidence was uncontradicted that Carpenter acquiesced in and complied with the instructions to "keep his hands off," which he received from his regular employer, and that the result of such acquiescence and compliance was to permit a sale to be procured through other agents (at the incidental additional cost, of course, of their commission) from his principal, acting in ignorance of the real situation, at a lower price and less advantageous terms than such principal would have been willing to accept had he known who the real purchaser was; and that this being so, the subsequent effort of the plaintiff to remedy this situation by destroying the effect of his disloyalty was immaterial because it did not, in fact, succeed. If, when Evans told plaintiff to "keep his hands off" in order that Evans' company might be allowed a free hand to deceive plaintiff's principal as to who the purchaser was, and thereby acquire the property at a lower price, the plaintiff had told Evans that he would not permit his principal to remain in ignorance of the true situation, of course, the contemplated deceit would have been dropped right there. Plaintiff did not do this, but, in fact, as he himself testified, after Evans told him to "keep his hands off" he "did nothing further with reference to the negotiations for the sale." Doubtless plaintiff was placed in a difficult situation, involving on the one hand the loss of his commission, or on the other possibly the loss of his employment, but that cannot alter the legal effect of his actions so far as the defendant is concerned. If the latter is bound to pay him a commission it must be on the basis that he acted with complete loyalty to it throughout the entire transaction. The fact that he was prevented from doing so by the difficulty of his position cannot be permitted to supply the complete loyalty which is essential to his recovery of his commission.

It is urged, however, that Olwell's action in signing the commission contract with Carpenter after the latter had informed him of the true situation and of the "keep your hands off" incident, must have the effect of a waiver by the defendant corporation of its right to consider that Carpenter had by his disloyalty forfeited his right to a commission on the sale at its hands. The difficulty with this proposition is that the alleged waiver did not occur until after the defendant corporation (acting by Olwell, its president) had, in fact, entered into a binding contract of sale of the property in question through other agents (whose commission it had become liable to pay), and there was no proof of authority from defendant's board of directors to its president, Olwell, to make such waiver after such a sale. It seems to be admitted, and must therefore be assumed, that Olwell had full authority as president of the defendant corporation to offer the property in question for sale in the usual manner and to enter into a contract of sale therefor. Such general authority, of course, contemplated and must be construed to include authority to employ one or more sales agents to effect such a sale and to pay such commission or commissions as Olwell, in the exercise of his reasonable discretion, thought necessary or desirable for that purpose. But, obviously, the termination of the general authority by the accomplishment of its object likewise terminated the incidental authority to do those acts which were necessary or desirable to bring about the object of the general authority. The actual sale of the property terminated Olwell's authority to employ sales agents to bring about a sale, and *a fortiori* terminated also his authority to incur liability on behalf of the corporation for the payment of commissions to agents to effect a sale. After the sale had been effected, therefore, through other agents, for the payment of whose commission the defendant corporation had become liable, where was Olwell's authority by the waiver now contended for, to incur an additional liability against the corporation for the payment of another commission upon the sale already made? We think there was none. Obviously, Olwell's general authority to incur liability against the corporation for commissions to sales agents employed to effect a sale

terminated with the actual accomplishment of the sale, and there was no proof offered of any other than this general authority.

There is also another aspect to the case which arises from the fact that at the time the defendant company entered into the contract of sale with Whiteside, who had been produced as a purchaser in his own behalf, in good faith by other brokers with whom the property had also been listed for sale, and who thereby became entitled to and did receive a commission on the sale, the defendant was told and believed that Whiteside was not purchasing the property in behalf of anyone else, and further, that no other agent except the two brokers above mentioned had in any way contributed towards producing this sale. Under these circumstances, as we held in *Resky* v. *Meyer,* 98 *N. J. L.* 168, the defendant company did not become liable to pay a commission to the plaintiff, because the defendant made the sale in entire good faith at a reduced price, upon the representation to him and with the understanding that the plaintiff, who had no contract of exclusive agency, had not contributed in any way towards procuring the purchaser. In the absence of an exclusive agency, it is the agent who, in good faith and without fraud on his part, procures and "delivers" (*i. e.,* actually closes the sale) to the purchaser that is entitled to the commission, and the principal, also acting in good faith and without fraud, is only liable for the payment of the commission to that agent. *Vreeland* v. *Vetterlein,* 33 *N. J. L.* 247.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.