BERGEN COUNTY COURT OF COMMON PLEAS.

SAM PERAINO, BY HIS NEXT FRIEND, STEVEN PERAINO, AND STEVEN PERAINO, INDIVIDUALLY, PLAINTIFFS, v. MARIE DeMAYO, DEFENDANT.

Decided March 5, 1935.

For the petitioner, *Minturn & Weinberger* (by *Mr. Joseph J. Weinberger*).

For the respondents, *McDermott, Enright & Carpenter.*

LEYDEN, C. P. J. The petition seeks the determination and enforcement of the alleged lien of Aaron L. Simon as attorney of record in the above entitled cause. The facts are as follows:

Sam Peraino (presumably an infant) while crossing the intersection of Pacific and Ray streets in the city of Garfield, this county, on the 15th day of March, 1933, was struck by an automobile owned and driven by Marie DeMayo. His leg was fractured and he was otherwise injured. He was

taken to Beth Israel Hospital and placed under the care of Dr. Philip H. Simon. The following morning the father of the boy, Steven Peraino, was approached by one John Radcliffe and it was suggested that Aaron L. Simon be employed to prosecute in the courts of our state the claim for the injuries sustained. Simon's printed form of accident statement and retainer agreement was submitted by Radcliffe for signature. This paper was not signed, but on the 22d day of March, 1933, after further efforts by Radcliffe and others, a similar printed accident statement and retainer agreement was signed by Steven Peraino and witnessed by Charles Schwartz and Moe Simon. It is as follows:

"Passaic, N. J., Mar. 22, 1933.

In consideration of services rendered or to be rendered in the foregoing matter between Sam Peraino, Plaintiff, and DeMayo, Defendant, I, Stephen Peraino agree to pay Dr. Aaron L. Simon 40 per cent. out of any monies realized in settlement of or from judgment obtained in said matter and I hereby assign said per cent. to them together with costs." (Then interlined in ink): "Medical costs to be paid by plaintiff. All legal costs to be paid by lawyer."
Witness:

CHARLES SCHWARTZ
MOE SIMON."

An action for negligence, alleging the injury to the boy on the 15th day of March, 1933, was instituted in this court. The summons was tested March 24th, 1933.

The file does not contain a petition for, or order appointing Steven Peraino as the next friend of Sam Peraino for the purpose of the action.

The answer in behalf of the defendant was filed April 22d, 1933, by DeTurck & West, attorneys, to which a reply was filed by Simon on the same day. A demand for a bill of particulars was made by DeTurck & West, acknowledged by Simon on the 20th day of April, 1933, and filed in the county clerk's office two days later. The file does not dis-

close compliance with this demand by plaintiffs. The case was duly noticed and placed upon the calendar of the Bergen County Court of Common Pleas for trial. Defendant made an offer of settlement in the sum of $2,000 which was submitted by Simon to Peraino and rejected.

While this action was pending and undertermined Aaron L. Simon was indicted, tried and convicted in the courts of the county of Passaic for a criminal offense. He was sentenced to a term in state's prison. On January 17th, 1934, his license to practice law was suspended. Thereupon the father, Steven Peraino, became anxious about the pending cause of action. He asked for his papers and was refused, except upon condition that he make a payment of $1,000 to Simon. He consulted Mr. John J. Breslin, Jr., prosecutor of Bergen county, in an effort to recover possession of the file. At Mr. Breslin's request Simon's office produced the file. Mr. Breslin offered it to Peraino but he refused it, saying he had no further need for attorneys. He thereupon, as he says, consulted Mr. West of the firm of DeTurck & West, whom he described as a friend.

Next we find him in the offices of the insurance carrier and shortly thereafter another suit was instituted in the Bergen County Circuit Court by Sam, by Steven Peraino as next friend, for the same cause of action against DeMayo. Mr. Bernard Hein, a lawyer in the office of DeTurck & West, appeared as attorney of record for the plaintiff. DeTurck & West appeared for the defense. On the 21st day of May, 1934, a friendly judgment was entered in the Circuit Court action in the sum of $1,750. This was done despite the fact that the Common Pleas action was still pending and undetermined. Upon learning of the entry of this judgment Simon filed the petition seeking to determine and enforce his lien as an attorney. It is admitted that petitioner, under the retainer agreement, conducted private investigations, secured statements from various witnesses, prepared for trial and expended the following sums: To Dr. Joseph L. Diaz, $50; Dr. A. F. Dowd, $50; Beth Israel Hospital of Passaic, $315.50.

Pursuant to said petition a rule was granted on the 17th day of December, 1934, requiring Marie DeMayo, the General Accident Insurance Company (her insurance carrier), Steven Peraino individually and as guardian for Sam Peraino, and Mary Peraino and Peter Zenkert (sureties on the guardian's bond), to show cause before the court why the attorney's lien of Aaron L. Simon should not be determined and enforced in accordance with the retainer agreement, and why either or all of them should not be directed forthwith to pay to the said Aaron L. Simon the sum so found to be due.

Agreeably to the practice outlined by Mr. Justice Parker in *Artale* v. *Columbia Insurance Co.,* 109 *N. J. L.* 463; 162 *Atl. Rep.* 585, respondents DeMayo and the General Accident Insurance Company filed answer to the petition. Therein the execution of the retainer agreement is admitted and its performance by Simon denied. The answer further denies the petitioner's right to a lien (1) because the retainer agreement is illegal and unenforceable; (2) there was no valid consideration therefor, and (3) there is no legal basis for a claim for medical expenses under the Attorney's Lien act.

At the hearing both sides stipulated that the issues of fact, if any, be tried by the court without a jury. However, the facts were undisputed. Counsel for DeMayo entered appearance in behalf of all the respondents.

The only testimony offered was that of Steven Peraino, called as a witness by petitioner. From it I conclude that his visit to the offices of the insurance carrier and the subsequent settlement by friendly judgment of the claim for damages were deliberate moves upon his part to defeat Simon's alleged claim under the agreement. However, it is true that the insurance carrier did not consider the settlement requests of Peraino until after the suspension of the license of petitioner. Likewise the friendly judgment was entered with the firm belief that Simon had no enforceable claim.

In passing, it might not be amiss to point out that the retainer agreement in question, if legal, was not binding upon

the infant plaintiff. If valid, it bound only the father in his individual capacity. It has already been indicated that there was no appointment in this court of the father as next friend · or guardian *ad litem* of the boy for the purpose of prosecuting suit, and likewise it will be observed that the plaintiff in the Circuit Court action was the boy by his father as next friend—no individual claim by the father for his consequential damages being made. But assuming the appointment of the father as next friend, or his appointment as general guardian of the boy by a court of competent jurisdiction, he was without power to bind his infant child, because a guardian has no power to bind either the person or estate of his ward by contract. He may be authorized by a court of competent jurisdiction to make a contract for his ward, but in such case he does not exercise a power belonging to his office as guardian, but an extraordinary power granted to him for a special purpose. *Reading* v. *Wilson*, 38 *N. J. Eq.* 446; 28 *C. J.* 1165. What a guardian cannot do directly he cannot do indirectly, and therefore his contract cannot give rise to a lien on the ward's property. *Los Angeles County* v. *Winans*, 13 *Cal. A.* 234; 109 *Pac. Rep.* 640.

Since an infant cannot bring suit and appear in his own name, the court appoints a competent person so to do. As was pointed out by Mr. Justice Scudder in *Newman* v. *Shipman*, 15 *N. J. L. J.* 83, "the usual practice is, in the first instance, to make application and have an order of the court that the guardian *ad litem* employ proper counsel to be approved by the court, whose expenses necessarily incurred and compensation shall be paid out of the fund belonging to the infant, under the control of the court." It is in the discretion of the court when the order for compensation shall be made and the amount thereof, but the right to such compensation does not rest upon the agreement of the guardian and the attorney, for as is pointed out in the last mentioned case "the giving of compensation for services to attorneys and counsel who act in aid of officers appointed by the court for the protection of infants and other disqualified suitors, does not rest on the agreement of such officers, who are not

able to bind their wards or their estate, but upon the order of the court making the appointment." The practice thus outlined was not followed in the instant case but no point of it is made by respondents.

Even if this were not so, I am of the opinion that the retainer agreement in question is void and unenforceable as it contravenes the public policy of the state. This is the first point raised by the respondents.

It is undisputed that agents of Simon solicited the father to engage Simon to prosecute the cause of action and as a result of their efforts the retainer agreement was executed. When Radcliffe approached Peraino requesting the retaining of Simon, he had in his possession Simon's printed form of accident statement and retainer agreement. He was clothed with the apparent authority to negotiate such contracts. Simon was bound by his acts. *Baurheen* v. *Fidelity and Deposit Company of Maryland,* 114 *N. J. L.* 99; 176 *Atl. Rep.* 137.

The practice of soliciting negligence cases, commonly called "ambulance chasing," seems to be increasing among those few members of the profession who lack the necessary character and fitness for the office of attorney and who look upon the practice of law, in the language of the day, as a business "racket" with a large pecuniary return. Ambulance chasing is condemned by the twenty-eighth Canon of professional ethics and is abhored by reputable members of the bar. Obviously it brings the entire profession into disrepute. In so far as the public is concerned it has, as is said in the case of *Hightower* v. *Detroit Edison Co.,* 261 *Mich.* 1; 247 *N. W. Rep.* 97; 86 *A. L. R.* 509, "developed recognized evils, the major of which are (1) fomenting litigation with resultant burdens on the courts and public purpose; (2) subornation of perjury; (3) mulcting of innocent persons by judgments, upon manufactured causes of action and perjured testimony, and by settlements to buy peace; and (4) defrauding of injured persons having proper causes of action, but ignorant of legal rights and court procedure, by means of contracts which retain exhorbitant percentages of recovery and illegal

charges for court costs and expenses and by settlements made for quick return of fees and against the just rights of the injured persons."

Our legislature recognized the evil and sought to eliminate it by enacting chapter 96 (*Pamph. L.* 1923, *p.* 201), amended by chapter 85 (*Pamph. L.* 1930, *p.* 320), providing as follows: "Any person or persons who shall, for pecuniary gain, solicit any person or corporation to engage, employ or retain either himself, any lawyer or other person, to manage, adjust or prosecute any claim, cause of action or action at law, against any person or corporation, for damages for negligence, shall be deemed and adjudged to be a disorderly person, pursuant to the provisions of the act to which this is a supplement, and shall be punished pursuant to the provisions of the act to which the within act is a supplement."

By so making the solicitation of legal business for pecuniary gain in negligence cases offensive and subjecting the wrongdoer to the penalties prescribed therein, the legislature intended, for the public good, to discourage and prevent as far as possible the practice of "ambulance chasing," and as Mr. Justice Parker pointed out in *Arotsky* v. *Kropnitzky*, 98 *N. J. L.* 344; 120 *Atl. Rep.* 921; *affirmed,* 101 *N. J. L.* 203; 127 *Atl. Rep.* 923: "If the court should undertake to enforce contracts made in such violation they would be aiding therein and encouraging the very mischief the act was passed to prevent."

Although this statute does not expressly declare agreements founded upon its disregard to be void, the inescapable and necessary implication is that they are void and unenforceable because they are founded upon a prohibited and penalized act.

The rule of law applicable is stated in *Sharp* v. *Teese,* 9 *N. J. L.* 352 (at *p.* 354): "The attempt to contravene the policy of a public statute is illegal. Nor is it necessary to render it so that the statute should contain an express prohibition against such attempt. It always contains an implied prohibition; and to such attempt the principles of the common law are invariably and deadly hostile, not always by an

interference between the parties themselves, or by enabling the one to recall from the other, where in *pari-delicto,* what may have been obtained; but by at all times refusing the aid of the law to carry into effect or enforce any contract which may be the result of such intended contravention." See, also, *Smith* v. *Applegate,* 23 *N. J. L.* 352 (at *p.* 356); *State* v. *Jersey City,* 34 *Id.* 390 (at *p.* 397); *Arotsky* v. *Kropnitsky, supra; Lewis* v. *Collins,* 1 *N. J. Mis. R.* 392. The rule is the same in equity. See *Cessna* v. *Adams,* 93 *N. J. Eq.* 276.

The retainer agreement resulted from an unlawful and prohibited act by Simon. He cannot obtain relief here, for the court will not lend its aid to one who founds his cause of action upon an illegal act. *Morris* v. *Muller,* 113 *N. J. L.* 46; 172 *Atl. Rep.* 63.

Taking this view it becomes unnecessary to discuss the other points raised by respondents. The petition for the determination and enforcement of the lien will be dismissed with costs.