MATTHEW J. READY, PLAINTIFF-APPELLANT, v. NATIONAL STATE BANK OF NEWARK, NEW JERSEY, A CORPORATION, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF THOMAS S. HENRY, DECEASED, DEFENDANT-RESPONDENT.

Submitted October 30, 1936—Decided January 28, 1937.

For the plaintiff-appellant, *Carl & William Abruzzese* (*Carl Abruzzese,* of counsel).

For the defendant-respondent, *Harrison & Roche* (*Auguste Roche, Jr.,* and *John J. McDonough,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE.   The question for determination here is whether the plaintiff, a layman, may recover in an action on express contract a portion of a contingent fee paid

for legal services to an attorney to whom he brought the case. The attorney with whom the agreement for the division of the fee was made, Thomas S. Henry, is dead and the suit was brought against his executor.

There is no room for doubt as to the plaintiff's theory of his cause of action. It is clearly stated in the complaint in the cause, in these words: "On or about June 28th, 1928, Thomas S. Henry, a practicing attorney and counselor-at-law of New Jersey, *entered into an agreement with plaintiff*, Matthew J. Ready, *to represent one* Frederick J. Brokaw, in certain condemnation proceedings instituted by the Essex county park commission to obtain for said Frederick S. Brokaw as much as the lands and premises sought to be condemned were reasonably worth." The ensuing paragraphs of the complaint recite that the said Henry was to charge said Brokaw ten (10%) per cent. of the award as and for fees in the matter; that the plaintiff was to assist the attorney in the preparation of the facts and the law of the case; that the said Henry agreed to pay the plaintiff one-half of the amount he received as a fee; that the attorney received $6,000 for his services; that the plaintiff performed all the services in accordance with the agreement; that the plaintiff was paid $100 on account and that there is still due and owing him the sum of $2,900; that the said Henry died on March 17th, 1934; that plaintiff's claim was presented to the executor of the estate and rejected.

A second count in the complaint, grounded on a *quantum meruit*, was abandoned at the trial.

It is a close question whether the plaintiff, by the evidence submitted in support of his claim, proved that an express contract was entered into between him and the deceased attorney on June 28th, 1928, or thereabouts, as he declares in his complaint. In an endeavor to prove the making of the contract as of that date, the plaintiff offered two witnesses, Mr. Archer and Mr. Skillman, members of the bar of the State of New York, who testified that the plaintiff and the deceased discussed the matter of the condemnation of Mr. Brokaw's farm and their arrangement about the division of the contin-

gent fee, on November 3d, 1928, while all four were dining together in a restaurant in Newark. A third witness, Mr. Romano, an attorney of this state, testified that while he was a law clerk in the office of Mr. Henry he overheard the plaintiff and the decedent discuss the various phases of the case before the trial and that Mr. Henry promised to pay over to the plaintiff one-half of whatever fee he received for his services. The witness fixed this conversation as having taken place early in the summer of 1928. It is unnecessary to discuss this element of the case further because, in our view, the determination of the question rests on more fundamental considerations.

From the portion of the complaint first above quoted, it is perceived that the plaintiff bases his right to recover on the proposition that the deceased attorney entered into an agreement with the plaintiff to represent a third party in a legal proceeding, and promised to pay plaintiff one-half of the contingent fee awarded him for those legal services. This statement seems to be closed to dispute since in answer to a demand for particulars as to whether plaintiff, with Mr. Henry, was retained by the client, the plaintiff answered, "I was requested by Frederick J. Brokaw and his wife to select a lawyer for them, shortly prior to June 28th, 1928."

The state of case discloses that Mrs. Brokaw happened to be shopping some time during the month of May, 1928, in a store owned by the plaintiff's sister. She mentioned the fact that her husband's farm was about to be taken in condemnation for park purposes. Shortly thereafter plaintiff came up to the Brokaw farm and suggested Mr. Henry as counsel to represent Brokaw in the condemnation proceeding. Brokaw didn't know Mr. Ready and said in fact that he had "never seen him before in his life." While, at the trial of this case, Brokaw denied that he had authorized the plaintiff to select an attorney for him, he did, however, retain Mr. Henry to look after his case, apparently at plaintiff's suggestion.

Turning again to the evidence of what transpired when the plaintiff and Mr. Henry discussed this matter in the presence

of the two New York attorneys in the Newark restaurant, the testimony of Mr. Archer discloses that the arrangement between Mr. Henry and the plaintiff was based on the fact "that Mr. Ready had *procured the case* and the judge was to be the lawyer." To the same effect was the testimony of Mr. Romano who said that the deceased attorney had told him "Mr. Ready *had brought this case in* and he appreciated it a lot * * *."

There also appeared in evidence a letter from Mr. Henry to the plaintiff, dated June 29th, 1928, saying, "Mr. and Mrs. Brokaw called to see me regarding condemnation. They told me that you had advised them to call on me. I want to assure you that I appreciate your kindness very highly and thank you very much * * *."

There was evidence in the case that the plaintiff had rendered service in the preparation of this matter for hearing. The plaintiff did not take the stand, presumably because he could not be heard to testify in this case to any transaction with the decedent unless the representative of that decedent was first offered as a witness. Evidence act, section 4; 2 *Comp. Stat., p.* 2218.

As the case turned, it is unnecessary for us to discuss whether the plaintiff might have received any compensation on *quantum meruit* for the work that he had done in interviewing real estate experts and the like. That count was abandoned and there was no proof of the reasonable value of such services. The claim is based on an express promise to pay one-half of the fee allowed. The plaintiff's right to recover rests on the proposition that he *"had brought this case in"* to the attorney (as Mr. Romano testified), or *"had procured this case"* for Mr. Henry (as Mr. Archer testified) or on the alternative which accords more strictly with the theory of the complaint that by his retaining the attorney to represent the client the plaintiff could contract with the attorney to receive one-half of the fee. We are firmly of the opinion that he cannot recover on either theory.

The uncontradicted testimony of Mr. Brokaw makes it apparent that he was not acquainted with the plaintiff; that

he had not sent for him; that the plaintiff had no interest whatever in the subject-matter of the ensuing litigation; that Mr. Brokaw had not authorized him to make a contract for him for the services of an attorney and that he knew nothing of the contract which the plaintiff made with the attorney regarding the division of fees to be paid.

We take it to be a self-evident proposition that courts cannot approve a claim for participation in a legal fee by a layman, the sole basis of which is that the layman procured the case for, or brought the matter to the lawyer's office. Regardless of what contract was entered into between the lawyer and the layman, with such service as a basis, the evils that would result therefrom can well be imagined. We consider an agreement of this kind contrary to public policy.

In defense of the contract it is argued that it is neither *malum in se* nor *malum prohibitum*. It is true that certain of our statutes may not be broad enough to include the transaction under review within their inhibition. Soliciting actions in negligence cases for pecuniary gain has for some years been denounced by the statute as disorderly conduct. *Pamph. L.* 1928, *ch.* 94, *p.* 201; amended, *Pamph. L.* 1930, *ch.* 85, *p.* 320, and it is a misdemeanor for one to practice law without being licensed so to do (*Pamph. L.* 1913, *ch.* 198, *p.* 358); and it is unlawful for a layman to solicit, directly or indirectly, any claim or demand for the purpose of taking legal action thereon. *Pamph. L.* 1924, *ch.* 138, *p.* 308; 1 *Cum. Supp. Comp. Stat., p.* 874.

Yet these statutes make manifest the trend of the legislative mind in matters of this kind. The practice of law is not open to all as a business but is reserved to those possessing the prescribed qualifications which are attained after years of study and training, and who are licensed as persons of sufficient learning and integrity to prosecute and defend the rights of others. All others are excluded from practicing law directly or indirectly. The practice of law is the licit and exclusive domain of lawyers. Practice act, section 17; *Comp. Stat., p.* 4055. The law recognizes no silent partnership whereby one not a lawyer may legitimately share in the fruits

of a lawyer's professional labors. Our statutes to which reference has been made, *supra,* indicate a policy of protecting litigants and the public, generally, from imposition which, if unchecked, would leave society to the mercy of the unscrupulous.

The abstract term "public policy" is impossible of definition in a statute. Nor can it be reduced to a formula for the reason that, like all abstract terms, it defies formularization.

In answer to the first alternative of the question before us, we have no hesitancy in saying that a contract between a layman and an attorney-at-law for part of a contingent fee to be earned by the attorney, based on a consideration of the layman procuring a case for the attorney, is void because it is contrary to public policy.

The second alternative is held in equal disfavor by the courts. Assuming that the plaintiff was authorized to make a contract in behalf of Brokaw for legal services to be rendered by the attorney, he could not, by secret arrangement, profit by his agency to employ counsel. An agent must not profit by the trust and confidence reposed in him. If it be true that the client instructed the plaintiff to select counsel for him, the plaintiff cannot ask the sanction of a court for the enforcement of a claim on a contingent fee paid to counsel by the client unless there was a full disclosure to the client of the fact that the agent expected to participate in the compensation to be paid for the attorney's services and the client agreed.

"A contract by an agent, even though acting as such without compensation, to receive without his principal's consent compensation for the performance of the agency is invalid." 3 *Williston, Contracts* (1920 *ed.*) 3035. *Howard et al.* v. *Murphy,* 70 *N. J. L.* 141; *Bollman* v. *Loomis,* 41 *Conn.* 581; *Holcomb* v. *Weaver,* 136 *Mass.* 265.

The trust and confidence of the principal accompanies the agency and the agent may not profit from his selection or recommendation of the attorney without the knowledge and consent of his principal. His choice of counsel cannot be disinterested if it is infected with self-interest. *Reilly* v. *Beek-*

*man,* 24 *Fed. Rep.* (*2d*) 791, 794; *Holcomb* v. *Weaver, supra.* Compare *Conant* v. *Petlit,* 92 *N. J. L.* 543, 546; 106 *Atl. Rep.* 469; *Carpenter* v. *Overland Tire Co.,* 102 *Id.* 196; 130 *Atl. Rep.* 665, and *Gordon* v. *Kaplan,* 99 *N. J. Eq.* 390; 132 *Atl. Rep.* 110.

With the proofs in the state which we have outlined, the learned trial judge directed a verdict in favor of the defendant. In our opinion, the judgment is free from error and is consequently affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 15.

*For reversal*—None.