FIRST JUDICIAL DISTRICT COURT OF HUDSON COUNTY.

ALBERT DONADT, PLAINTIFF, v. CHARLES R. EBERLE, DEFENDANT.

Decided August 5th, 1942.

For the plaintiff, *George Rothstein.*

For the defendant, *Hirschberg, Nashel, Zorn & Cronson.*

COZZI, D. C. J.  This is a suit upon a promissory note given by the defendant, Charles R. Eberle, to Albert Donadt.  The facts concerning the details and making of this note are succinctly stated.

The plaintiff knew the defendant to be a broker in real estate, and knew him for many years.  The defendant was not a licensed real estate broker.  The plaintiff introduced to the defendant, a prospect who wished to invest her money in the purchase of real estate, and it was agreed that if the defendant was able to negotiate a sale, of real estate, to the prospect, he would share equally with the plaintiff, his commissions.  Later, apparently the defendant could not transact the deal and called in a licensed broker by the name of Julius Berger to consummate the transaction, agreeing that the commissions realized would be divided equally among the plaintiff, the defendant, and Mr. Berger.

The deal was consummated and a commission from this transaction amounted to $1,980.  The defendant received one-half from Mr. Berger.  The plaintiff demanded his share of the commissions from Mr. Berger and Mr. Eberle, and after

some discussion, he accepted one promissory note in the sum of $250 and a separate note in the same amount from Mr. Berger. Thereafter, the plaintiff instituted a suit in the Second Judicial District Court of Bergen County, predicated upon the original agreement that he had with Mr. Berger and Mr. Eberle, whereby he was to receive one-third of the commissions amounting to $660, upon which he had already received $100, leaving a balance of $560.

Thereafter, the plaintiff filed a complaint with the New Jersey Real Estate Commission against the defendant, Mr. Eberle, and Mr. Berger, for failure to pay the commissions as agreed; and as a result, Mr. Berger was suspended as a broker for sixty days and Mr. Eberle was fined $200 by the New Jersey Real Estate Commission.

The plaintiff then filed a suit in this court against the defendant to recover the sum of $250 predicated on the promissory note given by the defendant already mentioned.

There are two questions the court must determine before coming to a conclusion in this matter. First, whether or not the original agreement between the plaintiff, the defendant and Mr. Berger, was a legal one, and if this question is answered in the negative, whether or not the promissory note given for the compromised sum of $250 constituted a new agreement free from the taint of illegality of the original transaction.

A perusal and careful analysis of the statutes applicable to the licensing of real estate brokers is clearly pertinent and significant in determining the public policy of this state.

See the case of *Ready* v. *National State Bank of Newark* (*Court of Errors and Appeals*), 117 *N. J. Law* 554; 190 *Atl. Rep.* 76.

The Revised Statutes of 1937, title 45:15-1; *N. J. S. A.* 45:15-1, provides as follows:

"License required to engage in business of real estate broker or salesman.

"No person shall engage either *directly or indirectly* in the business of a real estate broker, *temporarily* or otherwise, except as otherwise provided in this article, without being licensed so to do as hereinafter provided."

Section 45:15-2 provides as follows:

"Engaging in business" defined.

"*Any single act, transaction* or sale shall constitute engaging in business within the meaning of this article."

Section 45:15-3 provides as follows:

" 'Real estate broker' and 'real estate salesman' defined. A real estate broker, for the purposes of this article is defined to be a person, firm or corporation who, for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, *or offers or attempts to negotiate a sale,* exchange, purchase or rental of real estate or an interest therein, or collects or offers or attempts to collect rent for the use of real estate or negotiates or offers or attempts to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate for others.

"A real estate salesman, for the purposes of this article, is defined to be any person who, for compensation, valuable consideration or commission, or other thing of value, is employed by a licensed real estate broker *to sell or offer to sell,* buy or offer to buy or negotiate the purchase, sale or exchange of real estate, * * *."

Sections 17 to 19, inclusive, and sections 23 to 28, inclusive, prescribe the methods and powers of the New Jersey Real Estate Commission to charge, convict and penalize any persons for violation of this act.

In addition to this, the Court of Errors and Appeals of New Jersey, in the case of *Kenney* v. *Paterson Milk and Cream Co.,* 110 *N. J. L.* 141; 164 *Atl. Rep.* 274, held that this statute, *supra,* requiring realty brokers to be licensed, is regulatory and not for the purpose of revenue, and consequently denied a recovery to an unlicensed broker in a transaction for the sale of real and personal property, which he negotiated for the parties.

In the case of *Ready* v. *National State Bank of Newark, supra,* a layman sought to enforce an express agreement against an attorney who agreed to split a contingent fee with him as a result of his recommendation of a client. The Court of Errors and Appeals, in delivering its opinion through Chief Justice Brogan, stated as follows:

"In defense of the contract it is argued that it is neither *malum in se* nor *malum prohibitum*. It is true that certain of our statutes may not be broad enough to include the transaction under review within their inhibition. Soliciting actions in negligence cases for pecuniary gain has for some years been denounced by the statute as disorderly conduct. *Pamph. L.* 1928, *ch.* 94, *p.* 201; amended *Pamph. L.* 1930, *ch.* 85, *p.* 320 (*Cum. Supp. Comp. Stat.* 1930, §§ 59-8*p* (1), 59-8p (2)). And it is a misdemeanor for one to practice law without being licensed so to do. *Pamph. L.* 1913, *ch.* 198, *p.* 358 (*Cum. Supp. Comp. Stat.* 1924, § 52-214d) and it is unlawful for a layman to solicit, directly or indirectly, any claim or demand for the purpose of taking legal action thereon. *Pamph. L.* 1924, *ch.* 138, *p.* 309, § 2 (*Cum. Supp. Comp. Stat.* 1924, § 52-214q).

"Yet these statutes make manifest the trend of the legislative mind in matters of this kind. The practice of law is not open to all as a business but is reserved to those possessing the prescribed qualifications which are attained after years of study and training, and who are licensed as persons of sufficient learning and integrity to prosecute and defend the rights of others. All others are excluded from practicing law directly or indirectly. The practice of law is the licit and exclusive domain of lawyers. Practice Act, section 17 (3 *Comp. Stat.* 1910, *p.* 4055, § 17). The law recognizes no silent partnership whereby one not a lawyer may legitimately share in the fruits of a lawyer's professional labors. Our statutes to which reference has been made, *supra,* indicate a policy of protecting litigants and the public, generally, from imposition which, if unchecked, would leave society to the mercy of the unscrupulous.

"The abstract term 'public policy' is impossible of definition in a statute. Nor can it be reduced to a formula for the reason that, like all abstract terms, it defies formularization.

"In answer to the first alternative of the question before us, we have no hesitancy in saying that a contract between a layman and an attorney-at-law for part of a contingent fee to be earned by the attorney, based on a consideration of the layman procuring a case for the attorney, is void because it is contrary to public policy."

I am convinced from the study of the statute and the above decisions, a public policy has been definitely established in this state to exclude a layman from soliciting and engaging, directly or indirectly, in the sale of real estate. In my opinion, the statute regulating the licensing of real estate brokers, precludes any person other than a licensed broker or salesman from engaging, directly or indirectly, in the business of a real estate broker. Consequently, an unlicensed broker or a layman, cannot profit from any commissions derived from his promotion of a real estate transaction.

The plaintiff in this case, certainly did engage, directly and indirectly, in the sale of real estate, by introducing to the defendant and Mr. Berger, a prospect with whom they finally concluded a real estate transaction. The agreement to share the commissions certainly contravenes the spirit and letter of the Revised Statutes 45:15-1, &c., *N. J. S. A.* 45:15-1, *et seq.,* and therefore, it is illegal and unenforceable.

This brings us to the second question as to whether or not the promissory note given for the compromised sum of $250 constituted a new agreement free from the taint of illegality of the original transaction. This question must be answered in the negative.

In the case of *Lubin* v. *Rosenthal,* 117 *N. J. L.* 270; 187 *Atl. Rep.* 559, the Court of Errors and Appeals of New Jersey, in disposing of a similar question, stated (at *p.* 561), as follows:

"We also consider it settled that generally, where the suit is between the parties to an agreement infected with usury, the taint remains and is not eradicated by the making of a new agreement or the substitution of securities or new evidences of indebtedness unless the transaction be purged of its original vice. *Taylor* v. *Morris,* 22 *N. J. Eq.* 606; *Trusdell* v. *Dowden,* 47 *Id.* 396; 20 *Atl. Rep.* 972; *Kobrin* v. *Hull,* 96 *N. J. Eq.* 41; 124 *Atl. Rep.* 365; *affirmed,* 97 *N. J. Eq.* 546; 128 *Atl. Rep.* 921."

I, therefore, must come to the conclusion, for the reasons herein stated, that judgment must be entered in favor of the defendant in this cause.