233 N.J. Super. 310 (1989)
558 A.2d 1338
ANTHONY F. INFANTE, PLAINTIFF-APPELLANT,
v.
MICHAEL H. GOTTESMAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1989.
Decided May 16, 1989.
*311 Before Judges MICHELS, LONG and KEEFE.
Robert M. Anderson argued the cause for appellant (Gertler & Hanna, attorneys).
Allan J. Shechet argued the cause for respondent (Shechet & Spector, attorneys).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Anthony F. Infante appeals from a summary judgment of the Law Division entered in favor of defendant Michael H. Gottesman, an attorney-at-law licensed to practice in the State of New Jersey, in this action to recover damages on theories of breach of contract and quantum meruit arising out of the performance of investigative, paralegal and other services involving defendant's law practice.
Plaintiff, who ran an investigation service specializing in workers' compensation and personal injury litigation, entered into an agreement with defendant whereby plaintiff was to receive 50% of the legal fees generated by the matters that he brought into defendant's law office. This agreement was memorialized by a letter dated August 5, 1975, which reads as follows:
Dear Tony
I will give you 50% of everything you bring in. If you go into business with me we will draw the same money. I consider us full and equal partners.
 /s/ Michael H. Gottesman
Subsequently, the agreement was modified to provide that one-third of the gross receipts from these matters would be allocated to overhead and the remaining two-thirds would be shared equally by plaintiff and defendant. From the record, it is difficult to determine with any certainty the intended scope of the parties' business relationship. Plaintiff indicates, however, *312 that his paralegal and investigative services, which included "reviewing files, contacting insurance companies and talking to witnesses," were performed "in addition to [his] duties pursuant to his written agreement with defendant." In any event, plaintiff asserts that his employment with defendant was terminated in November 1981, at which time defendant "stopped making any and all payments."
Plaintiff instituted this action to recover damages in the sum of $80,000. In the first count of the complaint, he charged defendant with breach of the August 5, 1975, contract and sought to recover, pursuant to the terms of the contract, his share of the gross receipts generated by the matters that he had originated. In the second count, plaintiff sought to recover on theories of quantum meruit and constructive contract for investigative and paralegal services that he had performed with respect to "approximately 40 investigations and other files." On July 8, 1986, the trial court granted summary judgment in defendant's favor on the first count of the complaint, reasoning essentially that defendant was prohibited from entering into an agreement by which a partnership was formed with a nonattorney for the purpose of practicing law. On the second count, the trial court granted partial summary judgment in defendant's favor, thereby barring plaintiff from recovering for any investigative or paralegal services performed with respect to all matters in which he had been the originating party. The trial court held, however, that plaintiff could pursue his claim for the reasonable value of the investigative and paralegal services performed with respect to all matters in which he had not been the originating party.
Thereafter, plaintiff furnished defendant with a list of the 40 matters for which he had allegedly performed services and served defendant with a subpoena ordering the production of all files dated from August 5, 1975, through November 30, 1981. On January 8, 1987, at a pretrial conference, the parties agreed that (1) defendant would make available to plaintiff his workers' compensation and personal injury-negligence files dated *313 from January 1, 1975, through December 31, 1981; (2) plaintiff would identify and itemize any claims with respect to these matters, and (3) plaintiff would execute a consent judgment in defendant's favor with respect to the 40 matters referred to in the second count of the complaint. On March 12, 1987, the trial court entered a consent summary judgment order with respect to plaintiff's claims on the 40 matters.
After an inspection of defendant's files, plaintiff asserted a claim for services that he had performed on approximately 139 matters. On February 19, 1988, defendant moved for summary judgment with respect to these matters. In his papers in support of this motion, defendant separated the 139 matters into categories and argued that the claims on these matters were barred (1) by the six-year statute of limitations under N.J.S.A. 2A:14-1; (2) by the consent summary judgment order of March 12, 1987; (3) by the partial summary judgment order of July 8, 1986, or (4) because plaintiff had already been paid for his services. Plaintiff neither appeared at oral argument on defendant's motion nor submitted a certification, brief or any documents in opposition to the motion. In fact, plaintiff specifically indicated prior to the court's disposition on the motion that he would not oppose defendant's motion. In his brief on appeal, plaintiff asserts that his failure to offer any opposition to the motion was due to the fact that he had decided to appeal the summary judgments once they became final. On March 31, 1988, the trial court granted summary judgment in defendant's favor, reasoning that the claims were barred by the earlier summary judgment orders and the six-year statute of limitations. Plaintiff appeals.
Plaintiff acknowledges that the August 5, 1975, contract was void and unenforceable. He contends, however, that the trial court erred in granting summary judgment because it should have allowed plaintiff to pursue recovery on theories of quantum meruit and constructive contract for services rendered with respect to all matters that he had brought into the office. We disagree.
*314 Rule 5.4 of the Rules of Professional Conduct,[1] in pertinent part, provides:
(a) A lawyer or law firm shall not share legal fees with a nonlawyer....
* * * * * * * *
(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;
(2) a nonlawyer is a corporate director or officer thereof; or
(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.
RPC 5.5, which prohibits the unauthorized practice of law, in pertinent part, provides:
A lawyer shall not:
* * * * * * * *
(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.
Furthermore, N.J.S.A. 2A:170-78 provides:
Any person not licensed as an attorney or counselor at law, and any corporation that:
a. Engages in this state in the practice of law; or
b. Holds himself or itself out to the public, either alone or together with, by or through any other person, whether such other person is so licensed or not, as engaging in or entitled to engage in the practice of law, or as rendering legal service or advice, or as furnishing attorneys or counsel in legal actions or proceedings of any nature; or
c. Assumes, uses or advertises the title of lawyer or attorney at law, or equivalent terms, in the English or any other language  Is a disorderly person.
N.J.S.A. 2A:170-83 provides:
Any person not licensed as an attorney or counselor at law who solicits, advises, requests or induces any person in this state to institute or prosecute *315 any suit for damages in which the person soliciting, advising, requesting or inducing the institution of such suit by agreement or otherwise, directly or indirectly, receives from the persons solicited to institute or prosecute such suit, or his attorney, any compensation dependent upon the amount of the recovery in any such suit, or in which the compensation of any attorney for instituting or prosecuting such suit directly or indirectly depends upon the amount of the recovery therein, is a disorderly person.
N.J.S.A. 2A:170-85 provides:
Any person who, for pecuniary gain, solicits any person or corporation to engage, employ or retain either himself, any lawyer or any other person to manage, adjust or prosecute any claim, cause of action or action at law, against any person or corporation, for damages for negligence, or who, for pecuniary gain, directly or indirectly solicits other persons to begin actions at law to recover damages for personal injuries or death, is a disorderly person.
Thus, a lawyer is prohibited from entering into a partnership agreement with a nonlawyer where any of the partnership activities consist of the practice of law or where the lawyer shares legal fees with a nonlawyer. See RPC 5.4(a) and (b); Matter of Weinroth, 100 N.J. 343, 344 (1985); N.J. Advisory Committee on Professional Ethics, Opinion 56. Similarly, it is a disorderly persons offense for a nonlawyer to engage in the practice of law or to solicit legal work for or on behalf of a lawyer. See N.J.S.A. 2A:170-78; N.J.S.A. 2A:170-83; Ready v. National State Bank of Newark, 117 N.J.L. 554, 558 (E. & A. 1937); Peraino v. De Mayo, 13 N.J. Misc. 233, 239, 177 A. 692 (C.P. 1935). An agreement between a lawyer and a nonlawyer that contravenes these prohibitions is void and unenforceable because it is founded upon prohibited activity and is against public policy. See Ready v. National State Bank of Newark, supra, 117 N.J.L. at 559; Peraino v. De Mayo, supra, 13 N.J. Misc. at 239, 177 A. 692.
In Peraino v. De Mayo, supra, the father of an infant accident victim was approached by an attorney's agent who suggested that the certain attorney "be employed to prosecute in the courts of our state the claim for the injuries sustained." Thereafter, the father signed an agreement whereby he was obligated to pay to the attorney 40% of any monies realized on the claim. The Bergen County Court of Common Pleas held that this retainer agreement was "void and unenforceable as it contravene[d] *316 the public policy of the state." Peraino v. De Mayo, supra, 13 N.J. Misc. at 238, 177 A. 692. In reaching this conclusion, the court stated that "[t]he practice of soliciting negligence cases, commonly called `ambulance chasing' ... brings the entire profession into disrepute." Id. at 238, 177 A. 692. The court also noted that this practice was prohibited by statute:
Our legislature recognized the evil and sought to eliminate it by enacting chapter 96 (Pamph. L. 1923, p. 201), amended by chapter 85 (Pamph. L. 1930, p. 320), providing as follow: "Any person or persons who shall, for pecuniary gain, solicit any person or corporation to engage, employ or retain either himself, any lawyer or other person, to manage, adjust or prosecute any claim, cause of action or action at law, against any person or corporation, for damages for negligence, shall be deemed and adjudged to be a disorderly person, pursuant to the provisions of the act to which this is a supplement, and shall be punished pursuant to the provisions of the act to which the within act is a supplement."
By so making the solicitation of legal business for pecuniary gain in negligence cases offensive and subjecting the wrongdoer to the penalties prescribed therein, the legislature intended, for the public good, to discourage and prevent as far as possible the practice of "ambulance chasing," and as Mr. Justice Parker pointed out in Arotsky [Arotzky] v. Kropnitzky, 98 N.J.L. 344; 120 Atl. Rep. 921; affirmed, 101 N.J.L. 203; 127 Atl. Rep. 923: "If the court should undertake to enforce contracts made in such violation they would be aiding therein and encouraging the very mischief the act was passed to prevent."

Although this statute does not expressly declare agreements founded upon its disregard to be void, the inescapable and necessary implication is that they are void and unenforceable because they are founded upon a prohibited and penalized act. [13 N.J. Misc. at 239. (Emphasis added)].
In Ready v. National State Bank of Newark, supra, the plaintiff-layman and an attorney entered into an agreement whereby the attorney agreed to pay to the plaintiff one-half of the fee received on a matter that the plaintiff-layman had brought into the attorney's office. After the plaintiff-layman failed to receive his compensation pursuant to the terms of the agreement, he instituted an action to recover on the express contract or, alternatively, on quantum meruit. The quantum meruit claim was abandoned at trial. Thereafter, the trial court entered a directed verdict in favor of defendant, the executor of the attorney's estate.
On appeal, the Court of Errors and Appeals held that the plaintiff-layman could not recover under the contract any part *317 of a contingent fee paid for legal services to an attorney for whom he had generated the case. The Court reasoned:
We take it to be a self-evident proposition that courts cannot approve a claim for participation in a legal fee by a layman, the sole basis of which is that the layman procured the case for, or brought the matter to the lawyer's office. Regardless of what contract was entered into between the lawyer and the layman, with such service as a basis, the evils that would result therefrom can well be imagined. We consider an agreement of this kind contrary to public policy.
In defense of the contract it is argued that it is neither malum in se nor malum prohibitum. It is true that certain of our statutes may not be broad enough to include the transaction under review within their inhibition. Soliciting actions in negligence cases for pecuniary gain has for some years been denounced by the statute as disorderly conduct. Pamph. L. 1928, ch. 94, p. 201; amended, Pamph. L. 1930, ch. 85, p. 320, and it is a misdemeanor for one to practice law without being licensed so to do (Pamph. L. 1913, ch. 198, p. 358); and it is unlawful for a layman to solicit, directly or indirectly, any claim or demand for the purpose of taking legal action thereon. Pamph. L. 1924, ch. 138, p. 308; 1 Cum.Supp.Comp.Stat., p. 874.
Yet these statutes make manifest the trend of the legislative mind in matters of this kind. The practice of law is not open to all as a business but is reserved to those possessing the prescribed qualifications which are attained after years of study and training, and who are licensed as persons of sufficient learning and integrity to prosecute and defend the rights of others. All others are excluded from practicing law directly or indirectly. The practice of law is the licit and exclusive domain of lawyers. Practice act, section 17; Comp.Stat., p. 4055. The law recognizes no silent partnership whereby one not a lawyer may legitimately share in the fruits of a lawyer's professional labors. Our statutes to which reference has been made, supra, indicate a policy of protecting litigants and the public, generally, from imposition which, if unchecked, would leave society to the mercy of the unscrupulous.
The abstract term "public policy" is impossible of definition in a statute. Nor can it be reduced to a formula for the reason that, like all abstract terms, it defies formularization.

In answer to the first alternative of the question before us, we have no hesitancy in saying that a contract between a layman and an attorney-at-law for part of a contingent fee to be earned by the attorney, based on a consideration of the layman procuring a case for the attorney, is void because it is contrary to public policy. [117 N.J.L. at 558-559. (Emphasis added)].
In the present case, the agreement entered into by the parties admittedly pertained to defendant's legal practice and appeared to call for the sharing of the legal fees generated by the matters that plaintiff would bring into defendant's law office. *318 Unquestionably, this agreement was prohibited by the Rules of Professional Conduct and violated the statutory proscription against nonlawyers practicing law and soliciting law suits. Therefore, the agreement of August 5, 1975, is void and unenforceable. See Ready v. National State Bank of Newark, supra, 117 N.J.L. at 559; Peraino v. De Mayo, supra, 13 N.J. Misc. at 239, 177 A. 692. See also In re Frankel, 20 N.J. 588, 604-605 (1956) (Brennan, J., dissenting), where Justice Brennan noted that "[t]he breeding of litigation through use of lay runners compensated by payment of a sum contingent upon the recovery is an evil so vicious and so fraught with danger to the public interest that it has been classified as unprofessional conduct involving moral turpitude." Thereafter, Justice Brennan stated that "the contingent contract between [the attorney] and [the layman] was contrary to the public policy of this State" because it was in violation of N.J.S.A. 2A:170-83.
Furthermore, since the express agreement is void and unenforceable, we are satisfied that plaintiff cannot recover for any of the investigative, paralegal or other services performed on any of the matters that he brought into defendant's law office pursuant to that agreement. Although contracts for investigative and paralegal services are ordinarily legal and enforceable, defendant cannot, by fractionalizing the illegal agreement, circumvent the statutory proscription and public policy against agreements of this nature. While we recognize that our decision may unjustly enrich defendant to the extent that he has received the benefit of any investigative and paralegal services performed by plaintiff, the pervasive proscriptions against such agreements require that we not render any assistance to these parties.
Additionally, plaintiff consented to the entry of summary judgment with respect to the 40 matters referred to in the second count of the complaint. He cannot now appeal from the summary judgment order that dismissed his claim with respect to those matters. See Winberry v. Salisbury, 5 N.J. 240, 255 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); *319 Cooper Medical Center v. Boyd, 179 N.J. Super. 53, 56 (App. Div. 1981); Zinkerman v. Taft Stores, 30 N.J. Super. 322, 324 (App.Div. 1954).
Finally, plaintiff cannot appeal from the summary judgment order with respect to the claims for services on the 139 matters. Since plaintiff offered no opposition to defendant's motion for summary judgment as to these matters in the trial court, he will not be heard to complain that the trial court accepted as true the uncontradicted facts in defendant's moving papers, and thus he cannot challenge the summary judgment order entered in defendant's favor. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954); Baran v. Clouse Trucking, Inc., 225 N.J. Super. 230, 234 (App.Div. 1988), certif. den. 113 N.J. 353 (1988); Burlington County Welfare Bd. v. Stanley, 214 N.J. Super. 615, 622 (App.Div. 1987).
Accordingly, the summary judgment order under review is affirmed.[2]
NOTES
[1] The Rules of Professional Conduct became effective in New Jersey on September 10, 1984. They replaced the Disciplinary Rules of the Code of Professional Responsibility. Under the Code of Professional Responsibility, the above conduct was prohibited by DR 2-103 and DR 3-102.
[2] The Clerk of the Appellate Division is directed to forward a copy of this opinion and the entire file in this matter to David E. Johnson, Jr., Esq., Chief Ethics Counsel, Administrative Offices of the Courts, Hughes Justice Complex, CN-963, Trenton, New Jersey 08625, for review and such action as is deemed appropriate.