138 N.J. Super. 93 (1975)
350 A.2d 268
DORIS DWYER AND FRANCIS DWYER, PLAINTIFFS-APPELLANTS,
v.
ERIE INVESTMENT CO. (AMENDED TO ERIE TRADING CORP.), JOHN T. MENDEZ AND JOSEPHINE MENDEZ, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1975.
Decided December 15, 1975.
*96 Before Judges LYNCH, LARNER and FULOP.
Mr. Donald T. Joworisak argued for appellants (Mr. Thomas W. Sharlow, attorney).
Mr. Norman S. Karpf argued for respondent Erie Trading Corp. (Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys).
Mr. Edward A. Harmon argued for respondents John T. Mendez and Josephine Mendez.
The opinion of the court was delivered by LARNER, J.A.D.
On December 1, 1971 plaintiff Francis Dwyer was on the premises located at 92 Newark Avenue, Jersey City, New Jersey, owned by defendants John T. Mendez and Josephine Mendez. He was in the process of installing new plumbing facilities as a subcontractor of Efficiency Heating and Appliance Company which had been retained by the owners as the prime contractor for the job.
Defendant Erie Trading Corp. was a tenant conducting a check cashing business on the first floor of the building. The upper two floors contained apartments which were unoccupied at the time of the incident leading to this litigation.
On the assumption of the evidence most favorable to plaintiff, the following operative facts are controlling.
During the course of his work in preceding days plaintiff found a hole on one side of the building approximately 2' x 3' which led to a crawl space between the first and second floors. Inside this hole there was some type of air shaft with a piece of grating across the opening. Past the grating was a continuation of the crawl space which ultimately, with *97 appropriate maneuvering, could lead one to the rear of the store premises of Erie Trading. The hole in the outside wall was the result of a fire which had destroyed a building adjacent to the one in question. The hole was located approximately 8' above street level, although there was debris on the adjoining property which made it more easily accessible. Plaintiff had notified both the tenant and owner of the existence of the hole approximately two weeks prior to the incident when he discovered it while running heating lines between the basement and the upper floors. He warned them that someone could gain entrance that way and also that there was danger of the freezing of water pipes. They said they would look into it, but no repairs were made during the two-week interim period.
There was also some very general testimony that the locale of this building was part of a run-down urban scene wherein there was a consderable amount of crime and that the day after the fire vandals had entered the building through broken windows and doors and removed some of the copper piping and fixtures.
At approximately 6 A.M. on December 1 plaintiff arrived at the premises to complete his work on the second floor so that a tenant could move in later that day. There were no other persons in the building at the time. After about half an hour plaintiff heard some noises below. He leaned out of the second-story window and saw a black man emerging from the hole in the wall about three feet below him. Plaintiff did not recognize him as having any connection with the owner or tenant and demanded to know what he was doing there. In view of the absence of a response and his assumption that the man was a burglar, plaintiff picked up a metal garbage can and threw it at the intruder. Thereupon the latter drew a gun, shot at plaintiff, causing injuries to his arm and back.
Plaintiff brought suit against the tenant and owner, seeking damages flowing from the act of the intruder on the theory that they owed him the duty to provide a safe place *98 in which to work and that their failure to repair the hole in the wall constituted a negligent violation of that duty proximately resulting in his injuries and damages.
One trial resulted in a disagreement. At the second trial defendants moved for judgment on the following grounds: that there was an absence of proof of primary negligence and that plaintiff was guilty of contributory negligence as a matter of law. The judge granted the motion on the contributory negligence thesis.
It cannot be said that under the existing circumstances plaintiff's act of flinging the garbage can at the unknown intruder was unequivocally an act of negligence which was a substantial factor in bringing about the shooting which injured plaintiff. The reaction of plaintiff involved a sudden judgment decision in an atmosphere of stress and emergency which could permit reasonable minds of jurors to reach differing conclusions. Where there is no time to weigh alternative courses of action and the actor must make a speedy decision based on impulse, he is absolved from liability even if a wiser course might have been followed if time permitted deliberation. Harpell v. Public Service Coord. Transport, 20 N.J. 309, 317 (1956); Viruet v. Sylvester, 131 N.J. Super. 599, 602 (App. Div. 1975); Prosser, The Law of Torts (4 ed. 1971), § 33 at 168; Restatement 2d, Torts, § 470 (1967).
Plaintiff had the duty to exercise due care under the traditional test of a reasonable person as applied to the circumstances faced by him at the time. Whether he did act as a reasonably prudent person and whether his act of throwing the can was a substantial factor causing the intruder to use his gun were manifestly jury questions and should not have been determined as a matter of law by the court.
We next turn to consider whether the judgment below is sustainable on the absence of proof of actionable primary negligence of defendants. If the judgment below is warranted for a reason other than that relied upon by the trial judge the judgment must be affirmed. Burhans v. Paterson, *99 99 N.J.L. 490 (E. & A. 1947); Isko v. Livingston Tp. Planning Bd. et als., 51 N.J. 162 (1968). This requires an analysis of the duty owed by defendants to plaintiff, the nature of the negligence established by plaintiff, and the causal connection between that negligence and the act of shooting by the unknown trespasser.
Plaintiff was a contractor on defendant's premises carrying out his function of repairing the plumbing and heating equipment. As such, defendant-owner owed him the duty to exercise reasonable care to maintain the premises so as to afford a reasonably safe place for him to perform his work. Steward v. Esso Standard Oil Co., 111 N.J. Super. 426 (App. Div. 1970); Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. & A. 1947). In the absence of a charge of active negligent conduct, this duty extends to the exercise of reasonable care in connection with the physical condition of the premises where that condition itself creates the unreasonable risk for harm which directly causes the injury. See Zentz v. Toop, 92 N.J. Super. 105 (App. Div. 1966), aff'd 50 N.J. 250 (1967).
In the context of the facts of this case, does that duty on the part of defendant extend to the obligation to maintain his property so as to guard against the criminal event which caused plaintiff's injuries? The words of Chief Justice Weintraub in Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962), are particularly significant:
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [at 583]
We do not consider that fairness and policy dictate that an invitor has the duty to protect a contractor-invitee from the criminal activities of a trespasser emerging from the premises where that contractor is performing his work. *100 The obligation to maintain the premises in order to avoid unreasonable risk of harm to such a business invitee does not encompass exposure to liability for such an occurrence as was involved herein. The potential of liability arising out of this type of invitor-invitee relationship should not be limitless. The invitor's duty should be kept within the bounds of that which is appropriate to his transitory relationship with the contractor or his employees, i.e., to provide facilities which are reasonably safe for the performance of the work. A violation of that duty in turn should expose him to liability only for those risks which occur directly from the defective condition of those facilities. To expand the duty to risks, foreseeable or not, arising out of the criminal acts of others in the context of the relationship between plaintiff and defendant herein is beyond the bounds of fairness and justice. See Caputzal v. The Lindsay Co., 48 N.J. 69 (1966); Genovay v. Fox, 50 N.J. Super. 538 (App. Div. 1958), rev'd on other grounds 29 N.J. 436 (1959).
Other considerations may dictate contrary results in different fact patterns. Examples may be found in cases arising out of a landlord-tenant relationship. In Braitman v. Overlook Terrace Corp., 68 N.J. 368 (1975), the Supreme Court affirmed a finding of liability for a property loss by theft resulting from a landlord's failure to supply adequate locks. In other jurisdictions liability has been expanded in the landlord-tenant relationship to permit recovery for injuries suffered by a tenant resulting from an assault of an intruder based upon lack of security measures by the landlord. See Kline v. 1500 Massachusetts Avenue Apartment Corp., 141 U.S. App. D.C. 370, 439 F.2d 477 (D.C. Cir.1970); Annotation, "Landlord's obligation to protect tenant against criminal activities of third persons," 43 A.L.R.3d 331 (1972).
These decisions enlarging the area of duty and liability where injury or loss stems from foreseeable conduct of a criminal nature are representative either of a policy decision applied to particular fact situations or of the duty arising *101 from particular relationships between the parties. In both categories the essence of decision is the achievement of fairness and justice under the particular circumstances.
In our opinion the relationship between the parties herein requires as a matter of fairness and justice that the ambit of liability be curtailed rather than extended. There is no discernible policy involving the nature of the duty owed to plaintiff because of the relationship of contractor-contractee per se or because of underlying social needs which would dictate the contrary.
Even if we approach this case through an analysis based upon the concept of proximate cause rather than duty we reach the same conclusion. Perhaps it was foreseeable because of the failure to repair the hole in the wall that an intruder or burglar might utilize that hole to enter the premises. It is, however, beyond the scope of reasonable foreseeability for a property owner to anticipate that an intruder would exit from that opening and use a gun from outside the building to injure a person performing work inside the building. In simple terms, the presence of the hole as such is too remote to be considered as a causative factor of the act of shooting which took place outside the structure. Reasonable men and women on a jury could not conclude that the passive condition of the opening was a substantial factor in producing the act of the criminal or the injury to the victim.
A practical and appropriate suggestion for testing whether an act of a tortfeasor is a legal cause of harm to another is spelled out in the following language of the Restatement 2d, Torts, supra, § 435(2):
* * * The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.
Utilizing this test it appears "highly extraordinary" that the result in this case would ever ensue. And where hindsight *102 compels such a conclusion it would be unjust to permit a jury to speculate on the presence or absence of proximate cause under the guidance of an instruction which is as confusing as the concept itself.
In the ultimate, however, whether we consider the problem in terms of duty or proximate cause and whether we resort to the terminology of foreseeability or not, the same rationale applies:
Recovery for the type of result here involved is denied in many cases also on the ground of lack of proximate cause, which we should briefly mention. Utilization of that term to draw judicial lines beyond which liability will not be extended is fundamentally as an instrument of fairness and policy, although the conclusion is frequently expressed in the confusing language of causation, "foreseeability" and "natural and probable consequences." Many years ago a case in this State hit it on the head when it was said that the determination of proximate cause by a court is to be based "`upon mixed considerations of logic, common sense, justice, policy and precedent.'" Powers v. Standard Oil Co., 98 N.J.L. 730, 734 (Sup. Ct. 1923), affirmed o.b. 98 N.J.L. 893 (E. & A. 1923). * * * [Caputzal v. The Lindsay Co., supra, 48 N.J. at 77-78]
If the alleged consequence of the asserted negligence is highly extraordinary or is "in the language of the street cockeyed and far-fetched," the court must out of a sense of justice apply a limitation of liability which is "short of the remarkable, the preposterous, the highly unlikely." Prosser, supra at 268. See also, Glaser v. Hackensack Water Co., 49 N.J. Super. 591 (App. Div. 1958); Seidel v. Greenberg, 108 N.J. Super. 248, 258-261 (Law Div. 1969).
For the foregoing reasons we conclude that on the facts herein plaintiff failed to make out a case for jury consideration as to the owner. The tenant, Erie Trading Corp., is also entitled to judgment, not only for the same reasons but also because it had no control of the structure nor a duty relating to its maintenance.
Judgment is affirmed.