168 N.J. Super. 368 (1979)
403 A.2d 36
FRANZ A. KOENIG AND MARGARET KOENIG, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
GENERAL FOODS CORPORATION, DEFENDANT-APPELLANT, AND J. KEVIN MORAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1979.
Decided May 23, 1979.
*369 Before Judges LYNCH, CRANE and HORN.
Mr. Robert D. Kretzer argued the cause for appellant (Messrs. Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys).
Mr. Adrian I. Karp argued the cause for respondents Koenig.
No appearance on behalf of respondent Moran.
PER CURIAM.
After a trial by jury, judgment was entered against defendant General Foods Corporation in favor of plaintiff Franz A. Koenig in the sum of $226,000 plus interest of $21,085 and costs, and in favor of plaintiff Margaret Koenig in the sum of $20,000 plus interest of $1,866.80 and costs. The jury found in favor of codefendant J. Kevin Moran.
Plaintiffs' case proceeded on a variety of theories. The complaint alleged in the first count that defendant Moran, as the agent of General Foods, "negligently applied a portion *370 of the polygraph machine around the plaintiff's left arm and thereafter applied an inordinate, unreasonable and dangerous amount of pressure to said device," resulting in a crippling injury. The second count alleged that Moran negligently inflicted personal injury by reason of "inappropriate excessive and negligent pressure," and that Moran refused to interrupt the polygraph testing when the plaintiff Franz Koenig complained. The third count alleged an intentional assault and battery. The fourth count alleged that the polygraph examination was administered in a brutal and savage manner, constituting "an intentional infliction of emotional and physical distress" constituting the tort of outrage. The fifth count alleged that Margaret Koenig had been deprived of the love, society and consortium of her husband. At the end of plaintiffs' case the trial judge dismissed the third count alleging an assault and battery and the fourth count alleging the tort of outrage.
The evidence introduced by plaintiffs showed that in the latter part of 1975 an investigation was undertaken by Emil Monda, a security officer of General Foods, to determine whether a quantity of coffee valued at $50,000 which was believed to be missing had actually been shipped or was still in the warehouse. Among those interrogated by General Foods' security personnel were three truck drivers employed by Eastern Freightways, including Koenig. The truck drivers agreed to take polygraph tests. Koenig volunteered to take the test because he wanted to clear his name. Shortly before the test was administered in February 1976 Koenig noticed that Moran, the examiner, who was an off-duty policeman, was wearing a pistol. He testified that he felt betrayed; he thought Moran was an FBI man and that meant that they thought he was a thief and had stolen the coffee. As the questioning progressed Koenig began to feel more and more guilty. After a while he noticed that his left hand had no weight and the feeling went out of his arm. He mentioned his discomfort to Moran but the test was not terminated. Koenig did not ask Moran to stop the test because he wanted *371 to clear his name. At the conclusion of the tests it was determined that all three of the truckers had been cleared of any culpability. However, they were not immediately informed. When Koenig arrived home he felt dizzy and weak. He did not sleep, and the next morning as he was preparing to go to work he collapsed. A few weeks later he felt pain in his left forearm. Physical examination revealed no injury. Various treatments were attempted, with little improvement. Ultimately the condition was diagnosed by a psychiatrist as a depressive reaction and by a psychologist as a severe anxiety reaction with a hysterical component and a conversion reaction, a type of hysteria. The opinion of the experts, including defendant's expert neuropsychiatrist, was that the condition was the result of plaintiff's having been subjected to the stress of the polygraph tests. One of the treating psychiatrists noted that Koenig mentioned an experience he had as a child in Germany when a Nazi official struck his father.
Defendant contends that there can be no recovery for the alleged injury under New Jersey law; that the trial judge erred in his charge to the jury; that the verdict was contrary to the weight of the evidence; that comments of plaintiffs' attorney during summation exceeded the bounds of propriety; that the trial judge erred in deciding questions of evidence, and that the amounts awarded by the verdict were excessive.
Initially we observe that plaintiffs' proofs do not sustain the allegations of the complaint. No evidence was submitted to show that excessive pressure was applied to Koenig's arm while the test was administered. In fact, that theory was specifically abandoned by plaintiffs' counsel during summation. Counsel stated:
Does it really matter worth a darn, whether the polygraph test was conducted right or whether the cuff was on too long or whether it was inflated or whether it was deflated? It was the reputation, the self esteem of Franz Koenig which was on the line.
*372 The theory of negligence was articulated by plaintiffs' counsel as follows:
Why do I say that General Foods was negligent? Because they created an atmosphere of fear, suspicion, tension, pressure. They created it over a period of months and negligently created it through the negligent ineptitude of Mr. Monda.
Counsel stated that the objective of General Foods was "to get together a set of facts which would enable them to lodge a $50,000 insurance claim against Koenig's employer." The injury was identified as the giving of the test itself, which caused Koenig to undergo strain which hurt him, and the sight of the examiner's gun, which triggered a childhood memory of his father having been struck by a Nazi official in Germany.
In his charge to the jury the trial judge defined negligence as the failure to exercise reasonable and ordinary care. He told the jurors they would have to find whether Moran was negligent and, if so, whether he was an agent of General Foods. He then commented that no one really accused Moran of conducting the tests improperly and that plaintiff Koenig said that he was a perfect gentleman. The judge further said to the jury:
* * * perhaps, Mr. Moran was negligent; and if he was negligent, of course, General Foods was negligent in selecting a policeman who must wear a gun, even though in plainclothes  as we call it  to conduct the test. So, as I say, that's up to you. In that event if you were to find that  for example, I can see you finding Mr. Moran not guilty of negligence and yet finding General Foods guilty of negligence, which would really be the negligence of Mr. Monda, not deliberate  nothing like that  just that he didn't act carefully or prudently in his selection of the person to administer the polygraph test. That's all. We're not involved in a criminal action here. So, you have those areas to decide.
The issue of proximate cause was submitted to the jury as well as the issue of foreseeability. As to foreseeability, the trial judge said:
*373 * * * In determining whether reasonable care has been exercised, we'll just say for the minute, in the selection of Mr. Moran as the tester here, you will consider whether the defendant Monda-General Foods  they're one in the same  ought to have foreseen under attending circumstances that the natural and probable consequence of his act or omission to act would have been some injury. It is not necessary that the defendant have anticipated the very occurrence which resulted from his wrongdoing, but it is sufficient that it was within the realm of foreseeability that some harm might occur thereby. The test is the probable and foreseeable consequences that may reasonably be anticipated from the performance or failure to perform a particular act. If an ordinary person under similar circumstances and by the use of ordinary care, could have foreseen the results that some injury or damage would probably result and either would not have acted or if he did act, would have taken precautions to avoid the results, then the performance of the act or the failure to take such precautions would constitute negligence. So, you have to consider that also. In that connection, if you find that standing in the position of the defendant prior to their actions which allegedly caused the harm complained of by the plaintiff, that such harm was a highly extraordinary consequence of their conduct, then you may not find such conduct to have been the legal cause of the harm alleged by the plaintiff.
On appeal plaintiffs have described the alleged tortious conduct of General Foods as the intentional application of emotional stress by means of the polygraph test and the deliberate withholding of the test results which resulted in a psychiatric injury.
The key issue presented on this appeal, as we see it, is the foreseeability of harm in the administration of the polygraph test. If conduct creates an unreasonable risk of foreseeable harm, it matters not that the precise injury which occurred was not foreseen. If it is within the realm of foreseeability that some harm might result, negligence may be found. Bacak v. Hogya, 4 N.J. 417, 424 (1950); Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 133 (App. Div. 1960). Plaintiffs, however, have not presented evidence tending to prove that the use of a polygraph creates an unreasonable risk of harm to the individual being tested. At the most, counsel elicited from Moran, the operator, an admission that he has seen some people cry and exhibit symptoms of *374 nervous tension. He also testified that he would not administer the test to a person who had heart disease. But there was no proof that the apparatus was inherently dangerous or that its use involved potential injury. Nor is it a matter of common knowledge that the use of the device presents a risk of injury. Even when viewed in conjunction with the sight of Moran's gun, it cannot be reasonably said that a potential for harm should have been foreseen. The sight of guns on police officers and security officers is commonplace. The reasonably prudent person could not have perceived that the mere sight of the gun while a polygraph test was being administered would have resulted in any harm, let alone an unanticipated emotional reaction.
The injury suffered by Franz Koenig was indeed one which in the ordinary course of events would not be foreseen. The injury was bizarre, one alleged to have been caused by psychic stimuli. Based on principles of logic, common sense, justice and policy, we are of the view that no recovery should be permitted for such a remote, highly extraordinary and unexpected result. Caputzal v. Lindsay Co., 48 N.J. 69, 77-78 (1966); Dwyer v. Erie Investment Co., 138 N.J. Super. 93 (App. Div. 1975), certif. den. 70 N.J. 142 (1976); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, 1263 (Ct. App. 1928); Prosser, Law of Torts (3 ed. 1964), § 50; Restatement, Torts 2d § 435 (1965).
In view of our determination on the issue of negligence, it is not necessary for us to consider the remaining issues raised by defendant.
For the edification of counsel, we deem it advisable however to note our disapproval of the excesses in plaintiffs' counsel's summation. See Gilborges v. Wallace, 153 N.J. Super. 121, 140-142 (App. Div. 1977).
Judgment reversed.