276 N.J. Super. 142 (1994)
647 A.2d 841
GLORIA YUN, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF CHANG HAK YUN A/K/A CHANG HAK YUN, DECEASED, AND NAM YI YUN, GLORIA YUN, PYONG OK HWANG AND YO CHO SHIM,[1] INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
FORD MOTOR COMPANY, CASTLE FORD, UNIVERSAL MOTOR COACH, KIM'S MOBILE SERVICE CENTER, INC., MILLER MANUFACTURING CORPORATION AS WELL AS THEIR EMPLOYEES, STAFF, MANAGERS AND PERSONNEL RENDERING SERVICES, JOHN DOE, RICHARD ROE, PETER DOE, INC., 1 THROUGH 97 (THE FOREGOING WITH THE EXCEPTION OF FORD MOTOR COMPANY, CASTLE FORD, UNIVERSAL MOTOR COACH, KIM'S MOBILE SERVICE CENTER, INC., AND MILLER MANUFACTURING CORPORATION BEING A FICTITIOUS NAME OF THE PERSONS, FIRMS OR ENTITIES WHO PERFORMED WORK OR SERVICES ON THE SUBJECT MOTOR VEHICLE IN QUESTION, BEING A 1987 FORD VAN), DEFENDANTS-RESPONDENTS, AND PRECIOUS LINDERMAN AND CHARLES LINDERMAN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 14, 1994.
Decided May 12, 1994.
Motion for Reconsideration May 24, 1994.
Remanded June 20, 1994.
Decided September 26, 1994.
*145 Before Judges PETRELLA, BAIME and VILLANUEVA.
Ferdinand & Klayman, attorneys for appellants (Lane M. Ferdinand, on the brief).
Pitney, Hardin, Kipp & Szuch, attorneys for respondent Ford Motor Company (Paul E. Graham, on the brief).
Dwyer, Connell & Lisbona, attorneys for respondent Castle Ford (William T. Connell, on the brief).
*146 Newman & Boyle, attorneys for respondent Universal Motor Coach (Gary A. Cavalli, on the brief).
Hampson, Millet & Hermes, attorneys for respondent Kim's Mobile Service Center, Inc. (Robert G. Hampson, on the brief).
White, Fleischner, Fino & Wade, attorneys for respondent Miller Manufacturing Corporation (Paul F. Clark, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiffs Gloria Yun (as administrator ad prosequendum of the estate of Chang Hak Yun)[2] and Nam Yi Yun, the decedent's widow,[3] appeal from a summary judgment dismissing their claims against defendants Ford Motor Company (Ford), Castle Ford (Castle), Universal Motor Coach (Universal), Kim's Mobile Service Center, Inc. (Kim) and Miller Manufacturing Corporation (Miller).
Chang Hak Yun (Chang) was struck by an automobile on the Garden State Parkway while retrieving a spare tire that had fallen off of a Ford van in which he was a passenger. Approximately seven months later, he died of the injuries sustained. Plaintiffs brought suit against the defendants, claiming that the apparatus connecting the spare tire to the rear of the van was defective. Also named as defendants were Precious and Charles Linderman, the driver and owner, respectively, of the other automobile, who are not parties to this appeal. On June 9, 1992, a voluntary dismissal was filed as to Gloria Yun, individually, Pyong Ok Hwang and Yun Cho Shim, Chang's children.
*147 Plaintiffs claimed that the accident was a result of the "negligent manufacture, distribution, service and/or warranty" of the van and its parts by Ford, the manufacturer, and Castle, the dealership. Plaintiffs amended their complaint to add defendants Universal and Kim. Plaintiffs alleged that Universal was "responsible for the [negligent] installation, assembly, manufacture and/or distribution of a conversion kit to the defectively manufactured 1987 Ford [v]an." Plaintiffs contended that Kim had "improperly serviced the 1987 van and caused a hazardous condition to occur." In their third amended complaint plaintiffs alleged that Miller was "responsible for the [defective] manufacture of the spare tire carrier."
Ford, Castle, Universal, Kim and Miller moved for summary judgment to dismiss the complaint. In granting the defendants' motions by order dated September 30, 1992, the Law Division found as a matter of law that there was no proof of proximate cause and that the actions of Chang in seeking to retrieve the spare tire and assembly and that of the driver of the automobile that struck him broke the causal chain. The plaintiffs' complaint against defendants Precious and Charles Linderman was not dismissed because these defendants did not move for summary judgment.
On February 17, 1993, the assignment judge entered an order of dismissal with prejudice. The order notes that counsel represented to the court that the "within cause has been settled." Plaintiffs' action against the Lindermans was settled in March 1993.

I.
On November 27, 1988, between 11:10 p.m. and 11:40 p.m., Chang was a passenger in a 1987 Ford van owned and driven by his daughter, Yun Cho Shim (Yun), northbound in the local lanes of the Garden State Parkway (Parkway). While driving on the Parkway returning from Atlantic City, Yun heard a "rattling type" noise coming from the rear of the van. According to the plaintiffs, at approximately mile post 50.8 the plastic cover and spare tire *148 and part of the support bracket which was screwed to the rear of the van, landed directly behind Yun's van and then rolled across both lanes of traffic or were pushed there by another vehicle, ultimately coming to a rest against the wooden guard rail separating the Parkway lanes.
Yun safely drove the van onto the right berm of the highway and stopped. Chang, a rear seat passenger who was sixty-five years old at the time, exited the vehicle, then ran across two lanes of the dark, rain-slicked Parkway and retrieved the spare tire and some of the other parts. During the course of returning back to the Ford van across the Parkway, Chang was struck by the vehicle operated by defendant Precious Linderman. Precious Linderman had been driving northbound in the right lane when she saw and struck Chang as he was crossing the Parkway. After the initial impact, Linderman's vehicle slid on the wet road and struck Chang a second time. Chang died seven months later following a period in which he remained comatose.
After Ford manufactured the van, it was sent to Universal where its chassis was converted and the spare tire assembly installed before it was shipped to Castle. Yun purchased the van from Castle in its completed state. Although the record is not clear, it appears that Miller manufactured the spare tire assembly alleged to have been defective.
On October 27, 1988, approximately one month prior to the subject accident, defendant Kim had serviced the Ford van. According to Kim, Yun and Chang had brought the van to Kim for an oil change and a tune up. Kim changed the oil but advised Chang and his daughter that a tune-up was not necessary. However, Kim also advised them that the front driver's side tire was extremely bald and should not be driven in that condition. Consequently, Chang and his daughter requested Kim to change the tire with the spare located in the bracket on the outside rear of the van. Kim removed the spare tire from the bracket and used it to replace the worn left front tire. Kim thereafter placed the worn tire in the bracket and secured it.
*149 Additionally, Chang and Yun advised Kim that the bracket holding the spare tire was damaged, "bent down," apparently as a result of a motor vehicle accident that occurred several months earlier. Chang and Yun told Kim not to repair same, because they knew where to get the parts and that it was going to be repaired by the dealer and handled through the insurance company of the other driver who was involved in that motor vehicle accident. Kim's work order receipt notes "Bra[c]ket Bent down."
Shortly after the accident, on behalf of plaintiffs, Seymour S. Bodner, a consulting engineer, examined the van and the remains of the spare tire assembly. He opined that the bracket frame remained secured to the van's left rear door at its three attachment areas but a portion of the mounting bracket had sheared off from the assembly. Bodner concluded that an aluminum strap, which secured the attached spare tire, was defectively welded to the bracket frame. Consequently, the lower portion of the strap separated from its attachment to the bracket. The resulting "fatigue failure" of the strap then caused it to fracture with only a small portion remaining attached to the bracket.

II.
With a broad brush, plaintiffs seek to reverse the summary judgment granted to all defendants except Lindermans. Plaintiffs in their appellate argument do not even mention any of the defendants by name or capacity, rather they assert that the issue of proximate cause is a question for the jury.
Plaintiffs abandoned their claim against Ford apparently because the evidence showed that the spare tire assembly was not part of the vehicle when it left Ford's factory. At the motion for summary judgment the plaintiffs' attorney specifically told the court that he did "not oppose the motion made by Ford Motor Company." Having so stated, plaintiffs have no standing to appeal against Ford. See Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954); Infante v. Gottesman, 233 N.J. Super. 310, 318-19, 558 A.2d 1338 (App.Div. 1989); Baran v. *150 Clouse Trucking, Inc., 225 N.J. Super. 230, 234, 542 A.2d 34 (App.Div.), certif. denied, 113 N.J. 353, 550 A.2d 463 (1988); Burlington County Welfare Bd. v. Stanley, 214 N.J. Super. 615, 622, 520 A.2d 813 (App.Div. 1987).

III.
Kim, in its motion for summary judgment, relied upon the lack of proximate cause argument made by the other defendants but also asserted that there was no legal basis for plaintiffs' claim against Kim. Furthermore, plaintiffs' expert did not impute any negligence against Kim. Rather, he opined that the defect was weld failure with which Kim had nothing to do.
Kim alerted Chang and Yun to the problem but Chang and Yun told Kim that they did not want Kim to repair it. Kim had no duty to repair and therefore did not breach any duty. Weinberg v. Dinger, 106 N.J. 469, 484, 524 A.2d 366 (1987). An order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it. Isko v. Planning Board of Tp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968); Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 78, 628 A.2d 793 (App.Div. 1993). This is true even if the judge erroneously declined to reach the merits of the issue. Liebeskind v. Mayor and Mun. Council, 265 N.J. Super. 389, 400, 627 A.2d 677 (App. Div. 1993).

IV.
Because the initial complaint was filed on May 17, 1990, it falls within the scope of the Products Liability Act, N.J.S.A. 2A:58C-1 to -7 (hereinafter the "Act"). The Act defines a "product liability action" as:
a claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.
N.J.S.A. 2A:58C-1(b)(3).
An action under the Act parallels that of a claim under common law strict liability. Specifically, the Act requires a claimant *151 to prove by a preponderance of the evidence that "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose...." N.J.S.A. 2A:58C-2. The Act does not affect the requirement of causation, which is an essential element of an action based in either strict liability or negligence. See Coffman v. Keene Corp. 133 N.J. 581, 594, 628 A.2d 710 (1993); O'Brien v. Muskin Corp., 94 N.J. 169, 179, 463 A.2d 298 (1983); Weinberg v. Dinger, supra, 106 N.J. at 484, 524 A.2d 366 (a cause of action for negligence requires proof of proximate cause).
Accordingly, plaintiffs must prove that the alleged defect in the spare tire bracket assembly proximately caused the injuries sustained by Chang. Taylor by Wurgaft v. General Elec. Co., 208 N.J. Super. 207, 212, 505 A.2d 190 (App.Div.), certif. denied, 104 N.J. 379, 517 A.2d 388 (1986). Proximate cause is "`any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Daniel v. State, Dep't of Transp., 239 N.J. Super. 563, 595, 571 A.2d 1329 (App.Div.) (quoting Polyard v. Terry, 160 N.J. Super. 497, 511, 390 A.2d 653 (App.Div. 1978), aff'd o.b., 79 N.J. 547, 401 A.2d 532 (1979)).
Proximate cause has been described as a standard for limiting liability for the consequences of an act based "`upon mixed considerations of logic, common sense, justice, policy and precedent.'" Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990) (quoting Caputzal v. The Lindsay Co., 48 N.J. 69, 77-78, 222 A.2d 513 (1966)). Proximate cause "`must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.'" Caputzal, supra, 48 N.J. at 78, 222 A.2d 513. (quotations omitted). Under the most liberal interpretation, conduct constituting proximate cause "need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." Bendar v. Rosen, 247 N.J. Super. 219, 229, 588 A.2d 1264 *152 (App.Div. 1991). Thus, our focus must be on whether Chang's conduct was reasonably foreseeable versus "highly extraordinary," thereby breaking the chain of causation. See e.g. Morril v. Morril, 104 N.J.L. 557, 558-63, 142 A. 337 (E. & A. 1928) (a landowner did not correct a known defective latch on her garage and her nephew was subsequently injured when the garage door blew open and struck him in the face, resulting in the loss of an eye; in analyzing the proximate cause, the Court found that only "the most vivid imagination" would have comprehended the danger which eventually occurred). Id. at 563, 142 A. 337.
The present case presents extraordinary circumstances. After Ford manufactured a van, spare tire assembly was attached to the van by Universal. Assuming plaintiffs' allegations are true, an alleged defect in the spare tire assembly caused the spare tire and other parts to fall off the van and roll across the Parkway. Because the van in which Chang was travelling came safely to rest at the side of the Parkway, his actions were "highly extraordinary." Chang's attempt to retrieve the parts involved crossing the Parkway in both directions  an activity which cannot be described as anything short of extraordinarily dangerous, if not suicidal, as the action proved. In the process of returning from the middle of the Parkway, Chang was struck by Mrs. Linderman and fatally injured. Although cited in the context of the foreseeability of a person's emotional reaction to a given event, the New Jersey Supreme Court aptly noted in Caputzal, supra:
"Generally a defendant's standard of conduct is measured by the reaction to be expected of normal persons...."
[Caputzal, supra, 48 N.J. at 76, 222 A.2d 513 (quoting 2 Harper and James, The Law of Torts, § 18.4 at 1035 (1956)).]
Logic and fairness dictate that liability should not extend to injuries received as a result of Chang's senseless decision to cross the Parkway under such dangerous conditions. Common sense should have persuaded Chang, who was only a passenger, to wait for assistance or abandon the bald tire and damaged assembly. The van could have been driven safely home.
*153 A similar case involving an allegedly defective truck is Peck v. Ford Motor Company, 603 F.2d 1240 (7th Cir.1979). In Peck, the plaintiff brought suit against Ford, the manufacturer of a truck that broke down and was abandoned by its driver in the right lane of traffic on a major highway. Id. at 1241-42. The plaintiff, driving in another truck, collided with the disabled vehicle resulting in serious injuries. Id. at 1242. Ford appealed the jury verdict in favor of the plaintiff against Ford for $500,000.
The Seventh Circuit assumed for the purpose of its analysis that the truck was defective and that the defect caused the truck to stop on the highway. The court then considered whether the plaintiff's collision and resulting injuries were foreseeable consequences of the alleged defect. Plaintiff argued that it was foreseeable to the manufacturer that drivers of its trucks "may not do those things which would prevent [the defendant's] wrong from afflicting injuries." Id. at 1243. The plaintiff further argued that it was foreseeable that a tow truck would not be immediately available to remove a disabled vehicle.
The Seventh Circuit rejected the plaintiff's arguments and held as a matter of law that there was no proximate cause between the plaintiff's injuries and the alleged defect. Id. at 1245-47. In so doing, the Court drew a distinction between a defect which causes immediate harm and one in which a sufficient amount of time has passed to shift the duty to prevent further harm to other actors:
[T]he defect here did not cause any damage at [the time of failure]. The truck rolled to a stop without incident ... it would appear shortly after the truck came to a stop on the highway and other vehicles in the area had safely cleared the stopped truck, [defendant] had no further duty on the facts of this case to prevent harm. Its tort had "spent its force." That duty had passed to the driver who was clearly in the best position to prevent further harm.
Id. at 1244-45 (footnote omitted).
Likewise herein, the alleged defect in the spare tire assembly did not injure Chang. The driver of the van was able to pull the vehicle to the side of the road safely and without incident. In the words of the Seventh Circuit, the tort with regard to the allegedly defective spare tire bracket had "spent its force." Ibid. Chang's *154 injury occurred after he decided to leave the vehicle and cross the Parkway and return where he was struck. At most, the presence of the spare tire created a "condition upon which the subsequent intervening force acted" and in such case there is no proximate cause relationship between the defective product and the injury. Id. at 1245. See Brown v. United States Stove Co., 98 N.J. 155, 172, 484 A.2d 1234 (1984) (finding that remote cause was not a proximate cause, but instead was a condition under which the injury was received).
A tortfeasor will be held responsible for his negligent conduct if it is a "substantial factor" in bringing about plaintiff's injuries. Id. at 171, 484 A.2d 1234. Where, however, concurrent forces are involved, the manufacturer of a defective product may negate strict liability upon a showing of an intervening, superseding cause or the existence of another "sole proximate cause" of the resulting injury. Ibid. (citing Southwire Co. v. Beloit Eastern Corp., 370 F. Supp. 842, 857 n. 21 (E.D.Pa. 1974)). Assuming, arguendo, that the spare tire assembly was a substantial factor in causing Chang's injuries, Chang's highly extraordinary and dangerous actions in crossing the Parkway twice with complete disregard for his own personal safety clearly constitute a superseding and intervening cause of his own injuries.
Thus, "[t]he actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Caputzal v. Lindsay Co., 48 N.J. at 78, 222 A.2d 513 (quoting Restatement (Second) of Torts § 435(2) (1965)).
The Supreme Court faced a similar question in Brown. In that case, plaintiff was injured in his employer's garage after a space heater, which had been altered several years earlier, flared up. Id. at 162, 484 A.2d 1234. In Brown, as in the present case, the subsequent negligent acts of other parties independently caused Chang's injuries. Even assuming arguendo that the remaining defendants somehow bear responsibility for the allegedly defective *155 spare tire bracket assembly, that responsibility is only remotely connected with the injuries caused to Chang by Mrs. Linderman's vehicle. Moreover, in deciding to cross the Parkway at night, Chang assumed a substantial risk in attempting to retrieve the spare wheel.[4]
A person, such as Chang, "who has indicated by his actions that he has recognized that his conduct runs the risk of a particular danger, will not be permitted to absolve himself from responsibility for an objectively anticipatable injury resulting therefrom." Vallillo v. Muskin, 212 N.J. Super. 155, 162, 514 A.2d 528 (App.Div. 1986). In Vallillo, the plaintiff, an experienced swimmer, brought an action against pool manufacturers for injuries caused when he struck his head on the bottom of a pool. Id. at 157, 514 A.2d 528. Although the case involved a failure to warn claim, we noted plaintiff's decision to assume the risks involved when he dove into the pool:
Striking one's head on the pool bottom is an obvious result of diving into a shallow pool. Defendants' failure to warn that spinal injuries could result from such a head injury cannot be said to be a proximate cause of plaintiff's diving in conscious disregard of his own safety.
[Id. at 162-63, 514 A.2d 528.]
This reasoning is equally compelling herein. The danger involved in crossing a busy highway at night should be apparent to an adolescent, let alone an adult sixty-five years of age.
The allegedly defective product (the spare tire carrier) did not cause Chang's injuries. Chang's and Yun's joint decision, thirty days before this accident, not to repair the allegedly defective assembly and Chang's flagrant disregard for his personal safety by crossing the Parkway late at night and the injuries he *156 received when struck by Linderman's vehicle constitute intervening superseding causes. Logic, common sense, justice and fairness dictate that the alleged product defect was not a proximate cause of Chang's injury.
Usually, the issue of proximate cause is reserved for the jury's determination. Geherty v. Moore, 238 N.J. Super. 463, 478-79, 570 A.2d 29 (App.Div. 1990), appeal dismissed, 127 N.J. 287, 604 A.2d 110 (1991); see also Glaser v. Hackensack Water Co., 49 N.J. Super. 591, 598, 141 A.2d 117 (App.Div. 1958) (stating that a question of proximate cause is usually for the jury "unless the consequences are so highly extraordinary that as a matter of law they cannot be considered natural"). In certain cases, however, the issue of proximate cause has been held so intertwined with issues of policy as to be treated as a matter of law for the court to determine. Caputzal, supra, 48 N.J. at 78-79, 222 A.2d 513. This is especially true where the manner or type of harm caused to the plaintiff is unexpected. As the Supreme Court stated in Caputzal: "[t]he idea of nonliability for the highly extraordinary consequence as a question of law for the court has already been recognized in this state." Id. at 78, 222 A.2d 513; accord Lutz v. Westwood Transportation Co., 31 N.J. Super. 285, 290, 106 A.2d 329 (App. Div.), certif. denied, 16 N.J. 205, 108 A.2d 120 (1954). This position is consistent with that of the Restatement (Second) Torts § 435(2) (1965):
The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.
For cases citing the Restatement (Second) Torts § 435(2) see Caputzal, supra, 48 N.J. at 78, 222 A.2d 513; Dwyer v. Erie Investment Co., 138 N.J. Super. 93, 101, 350 A.2d 268 (App.Div. 1975) certif. denied, 70 N.J. 142, 358 A.2d 189 (1976).
In Caputzal, plaintiff purchased a water softener for his home which was manufactured, sold and installed by the defendants. Caputzal, supra, 48 N.J. at 71, 222 A.2d 513. Approximately two weeks later, the plaintiff made coffee using the "softened water" *157 without any ill effect. Id. at 71-72, 222 A.2d 513. Plaintiff subsequently discovered that the water coming out of the water tap was a brownish, rusty color, became distraught at the thought of having consumed the brackish water and suffered a heart attack. Id. at 72, 222 A.2d 513.
The trial court granted summary judgment in favor of the manufacturer which was subsequently affirmed by the Supreme Court. Id. at 77, 222 A.2d 513. Noting that the concept of proximate cause is an instrument of fairness and policy, the Supreme Court concluded that the plaintiff's heart attack was too unusual and extraordinary a result of defendants' acts or omissions to constitute legal cause. Id. at 79, 222 A.2d 513. The Court noted that:
"[A]s a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."
[Id. at 78, 222 A.2d 513 (quoting Prosser, Torts, § 30, at 146 (3rd ed. 1964))].
In Jensen v. Schooley's Mountain Inn, 216 N.J. Super. 79, 522 A.2d 1043 (App.Div.), certif. denied, 108 N.J. 181, 528 A.2d 11 (1987), the defendant bar served alcoholic beverages to Jensen while he allegedly was visibly intoxicated. After leaving the bar, Jensen drove eight miles, where he "parked his car and, for some unknown reason, began climbing a tree." Id. 216 N.J. Super. at 80, 522 A.2d 1043. The branches of the tree apparently could not support Jensen's weight and one broke, causing Jensen to fall twenty feet to the river bank. Jensen either fell or rolled into the river and drowned. Accepting as true plaintiffs' allegations that the defendant negligently and wrongfully served Jensen, we nonetheless affirmed the trial court's granting of summary judgment in favor of the defendant. We stressed:
[L]egal responsibility for the consequences of an act cannot be imposed without limit. The events here transgress the judicial line beyond which liability should not be extended as a matter of fairness or policy.
[Id. at 82, 522 A.2d 1043 (citations omitted).]
That principle is equally applicable herein. It was not reasonably foreseeable to defendants that if the spare wheel assembly *158 was defective, and the driver-owner of the car and Chang refused to have it repaired and later while they were driving on the Parkway at night, it fell off but they safely brought the car to a stop on a berm, that Chang would then violate the law by twice crossing the Parkway to go to the median to retrieve the parts and be killed by a passing car. Furthermore, reasonable people could not differ that the continued driving for thirty days with knowledge of the defect and the senseless, and illegal crossing of the Parkway were intervening superseding causes of the accident which broke the chain of causation.
Affirmed.
BAIME, J.A.D., concurring and dissenting.
I agree that the judgment in favor of Ford Motor Company should be affirmed because plaintiffs offered no opposition to that defendant's motion for a dismissal of the complaint. See Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954); Infante v. Gottesman, 233 N.J. Super. 310, 318-19, 558 A.2d 1338 (App.Div. 1989); Baran v. Clouse Trucking, Inc., 225 N.J. Super. 230, 234, 542 A.2d 34 (App.Div.), certif. denied, 113 N.J. 353, 550 A.2d 463 (1988); Burlington County Welfare Bd. v. Stanley, 214 N.J. Super. 615, 622, 520 A.2d 813 (App.Div. 1987). So too, my careful review of the record fails to disclose facts sufficient to support a negligence claim against Kim's Mobile Service Center. Consequently, the judgment in favor of that defendant should also be affirmed. See Judson v. Peoples Bank and Trust Co., 17 N.J. at 75, 110 A.2d 24. However, I part company with my colleagues in their affirmance of the Law Division's judgment as to the remaining defendants. I believe that plaintiff's submissions relating to proximate cause were sufficient to defeat the defendants' motion for summary judgment.
To recover damages for negligence or on a strict liability theory, plaintiff must prove that the defendant's fault was a proximate cause of the injury sustained. See Realmuto v. Straub Motors, Inc., 65 N.J. 336, 343, 322 A.2d 440 (1974). The term "proximate *159 cause" has been variously defined. We have said that proximate cause is "`any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Daniel v. State, Dep't of Transp., 239 N.J. Super. 563, 595, 571 A.2d 1329 (App.Div.) (quoting Polyard v. Terry, 160 N.J. Super. 497, 511, 390 A.2d 653 (App.Div. 1978), aff'd o.b., 79 N.J. 547, 401 A.2d 532 (1979)), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990). It has otherwise been defined as "`a cause which necessarily set the other causes in motion and was a substantial factor in bringing the accident about,'" or as a "`cause which naturally and probably led to and might have been expected to produce the accident'" which is the subject of the claim. Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990) (quoting Model Jury Charges (Civil) § 7.11). Our Supreme Court has emphasized that "a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries." Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959). "The fact that there were intervening causes which were foreseeable or were normal incidents of the risk created [does] not relieve the tortfeasor of liability." Ibid. (citing Prosser, Torts § 49 (2d ed. 1955); Menth v. Breeze Corp., 4 N.J. 428, 442, 73 A.2d 183 (1950); Andreoli v. Natural Gas Co., 57 N.J. Super. 356, 366, 154 A.2d 726 (App.Div. 1959)). Stated somewhat differently, "[t]o be a proximate cause ... conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." Bendar v. Rosen, 247 N.J. Super. 219, 229, 588 A.2d 1264 (App.Div. 1991). The tortfeasor need not foresee the precise injury; it is enough that the type of injury be within an objective "`realm of foreseeability.'" Id. at 229-30, 588 A.2d 1264 (quoting Koenig v. General Foods Corp., 168 N.J. Super. 368, 373, 403 A.2d 36 (App.Div.), certif. denied, 81 N.J. 329, 407 A.2d 1203 (1979)); see also Kelly v. Gwinnell, 96 N.J. 538, 543, 476 A.2d 1219 (1984); *160 Restatement (Second) of Torts § 442 (1965). The point that our cases have stressed is that a tortfeasor should not be permitted "to absolve himself from responsibility for an objectively anticipatable injury" resulting from his conduct. Vallillo v. Muskin Corp., 212 N.J. Super. 155, 162, 514 A.2d 528 (App.Div. 1986).
Our Supreme Court has said that "[a]lthough the concept resists definition," proximate cause is "a standard for limiting liability for the consequences of an act based `upon mixed considerations of logic, common sense, justice, policy and precedent.'" Scafidi v. Seiler, 119 N.J. at 101, 574 A.2d 398 (quoting Caputzal v. Lindsay Co., 48 N.J. 69, 77-78, 222 A.2d 513 (1966)). Fairness and policy "enter into [the] assessment of the causal relationship between the conduct and the accidental harm." Griesenbeck by Kuttner v. Walker, 199 N.J. Super. 132, 139, 488 A.2d 1038 (App.Div.), certif. denied, 101 N.J. 264, 501 A.2d 932 (1985); see also Brown v. United States Stove Co., 98 N.J. 155, 173, 484 A.2d 1234 (1984). Thus, "[t]he actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Caputzal v. Lindsay Co., 48 N.J. at 78, 222 A.2d 513 (quoting Restatement (Second) of Torts § 435(2) (1965)).
Ordinarily, questions of proximate cause are left to the jury for its factual determination. Scafidi v. Seiler, 119 N.J. at 101, 574 A.2d 398; Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209-10, 485 A.2d 305 (1984); Rappaport v. Nichols, 31 N.J. at 203, 156 A.2d 1; Martin v. Benque, Inc., 25 N.J. 359, 374, 136 A.2d 626 (1957); Vadurro v. Yellow Cab Co., 6 N.J. 102, 108, 77 A.2d 459 (1950); Geherty v. Moore, 238 N.J. Super. 463, 478-79, 570 A.2d 29 (App.Div. 1990), appeal dismissed, 127 N.J. 287, 604 A.2d 110 (1991); Butler v. Acme Markets, Inc., 177 N.J. Super. 279, 289, 426 A.2d 521 (App.Div. 1981), aff'd, 89 N.J. 270, 445 A.2d 1141 (1982); Palmisano v. Ehrig, 171 N.J. Super. 310, 313, 408 A.2d 1083 (App.Div. 1979), certif. denied, 82 N.J. 287, 412 A.2d 793 (1980); Torsiello v. Whitehall Labs., 165 N.J. Super. 311, 327-28, 398 A.2d *161 132 (App.Div.), certif. denied, 81 N.J. 50, 404 A.2d 1150 (1979). Likewise, questions of intervening cause are generally within the jury's domain. See Rappaport v. Nichols, 31 N.J. at 203, 156 A.2d 1 (citing Martin v. Bengue, Inc., 25 N.J. at 374, 136 A.2d 626; Brower v. New York Cent. & H.R.R. Co., 91 N.J.L. 190, 191, 103 A. 166 (E. & A. 1918)); Vadurro v. Yellow Cab Co., 6 N.J. at 106-08, 77 A.2d 459; Geherty v. Moore, 238 N.J. Super. at 478-79, 570 A.2d 29; Palmisano v. Ehrig, 171 N.J. Super. at 313, 408 A.2d 1083; Torsiello v. Whitehall Labs., 165 N.J. Super. at 327-28, 398 A.2d 132. Prosser and Keeton have instructed that:
if reasonable persons could differ, either because relevant facts are in dispute or because application of the legal concept of "proximate cause" to the case at hand is an evaluative determination as to which reasonable persons might differ, the issue of "proximate cause" is submitted to the jury with appropriate instructions on the law.
Thus, in any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description; and to this extent it may properly be said that "proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case."
[Prosser and Keeton on Torts § 45 at 321 (5th ed. 1984).]
Applying these principles, I am convinced that reasonable persons might differ regarding whether the plaintiff's death was proximately caused by the defective spare tire assembly. A jury could find that it was reasonably foreseeable the tire would dislodge and fall onto the roadway while the van was in operation and that the operator or passenger might sustain injuries in his or her attempt to retrieve it. Indeed, some might think it odd if the operator or passenger were to abandon the tire and drive off, especially where, as shown by the record here, traffic is "very light," and "visibility [is] good." And if the operator or passenger were negligent in his or her attempt to retrieve the tire, this would be reflected within the calculus of comparative fault. In other words, the entire incident could reasonably be viewed within an "objective `realm of foreseeability.'" Bendar v. Rosen, 247 *162 N.J. Super. at 229-30, 588 A.2d 1264 (quoting Koenig v. General Foods Corp., 168 N.J. Super. at 373, 403 A.2d 36). A jury could also reasonably find that the harm that resulted was not proximately caused by the defective assembly and that fairness and logic demand that defendants be absolved from responsibility. I am of the view that the issue is reasonably debatable and one that should be submitted to the jury for its determination.
I note one final point before leaving the subject. While I recognize the power and duty of a trial judge to bar the jury from considering the question of proximate cause where the consequences of a negligent act are so extraordinary that as a matter of law they cannot be considered "natural," that authority should be exercised sparingly. We judges are strange creatures. It is not that we are less brave than others, but rather by reason of our training, if not our nature, we tend to the conservative. For most of us, prudence and caution are the watchwords. We are rarely rewarded for taking risks. But the rest of the population does not always act the way we do. What may appear strange to judges might seem rather ordinary to others. It thus generally makes sense to have lay people, not judges, make decisions on the question of proximate cause, grounded as that concept is in considerations of foreseeability and fairness. And in that context, a jury might well find it rather ordinary for a person to venture on to the highway on a clear night when there is little traffic in order to retrieve a spare tire that has become dislodged from his vehicle. I would thus reverse as to all defendants except Ford Motor Company and Kim's Mobile Service Center.
NOTES
[1] Yun Cho Shim is incorrectly identified as Yo Cho Shim.
[2] The complaint and amended complaints refer to Gloria Yun as the administrator ad prosequendum and make no reference to an administrator or executor, who would be the proper party to bring the survivorship action asserted because these are damages to which the deceased would have been entitled had he lived. N.J.S.A. 3B:1-3.
[3] Nam asserted a per quod claim.
[4] Not only was Chang's decision to cross the Parkway risky, but it was also in violation of N.J.A.C. 19:8-1.9(b) which prohibits on the Parkway "[p]edestrians except on sidewalks, footpaths and other areas specifically designated by the Authority for that purpose." Chang's action in crossing the Parkway where he did was also a violation of N.J.S.A. 39:4-34 which provides in part: "It shall be unlawful for a pedestrian to cross any highway having roadways separated by a medial barrier, except where provision is made for pedestrian crossing."